**COTTMAN TRANSMISSION SYSTEMS, INC., Plaintiff,**

v.

**METRO DISTRIBUTING, INC., et al., Defendants.**

**COTTMAN TRANSMISSION SYSTEMS, INC., Plaintiff,**

v.

**CHERRY HILL PRODUCTIONS, INC., et al., Defendants.**

Civ. A. Nos. 92–2131, 92–2253.

United States District Court, E.D. Pennsylvania.

June 12, 1992.

Richard P. McElroy, George J. Krueger, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for plaintiff.

Donald J. Farage, Dennis Scanlon, Philadelphia, Pa., for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

The above-captioned actions have been filed as related cases. This Memorandum shall be applicable to each. Resolved in herein are the following attacks upon plaintiff's Complaint: (1) Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, (2) Defendants' Motion to Dismiss for Lack of Per-

sonal Jurisdiction pursuant to Rule 12(b)(2), (3) Defendants' Motion to Dismiss for Improper Venue pursuant to Rule 12(b)(3), (4) Defendants' Motion to Dismiss Count I for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), and (5) Defendants' Motion to Transfer pursuant to 28 U.S.C. § 1404(a).

Plaintiff alleges the following facts in its Complaint: Plaintiff, Cottman Transmission Systems, Inc. ("Cottman"), is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business in Fort Washington, Pennsylvania. Cottman is the owner and nationwide franchisor of the Cottman trademark, which it licenses for use in connection with the automotive transmission repair business.

Defendants are fourteen corporations, all organized and existing under the laws of the State of Michigan, and fifteen individuals, all corporate officers of the defendant corporations and citizens of the State of Michigan. Defendants operate automotive transmission repair shops in central and southeastern Michigan.

A–1 Transmissions, Inc. ("A–1"), is a non-party franchisor of automotive transmission repair shops in Michigan. In the summer of 1991, Cottman and A–1 entered into an agreement granting Cottman exclusive use of the "A–1 Transmission" mark in Michigan and giving Cottman the right to convert existing A–1 franchises to Cottman franchises.

Pursuant to the agreement between Cottman and A–1, each defendant or its predecessor in interest received a Michigan Uniform Offering Circular from Cottman proposing the conversion of its A–1 franchise into a Cottman franchise. Conversion consisted of substitution of Cottman licensing agreements for the A–1 licensing agreements then in effect. Compared to the A–1 licensing agreements, the Cottman agreements reduced the advertising fees to be charged during the first month of the new franchises, shortened the period of the covenants not to compete, and did not require payment of franchise fees or changes in franchises' locations, operators, or telephone numbers.

All of the defendants accepted Cottman's offer to convert. In or around August of 1991, each entered into a licensing agreement with Cottman and a related agreement terminating its A–1 franchise. Cottman and A–1 entered into a one-year management agreement whereby A–1 appointed Cottman manager of all A–1 franchises not converted.

On March 19, 1992, Cottman mailed a letter to each defendant notifying him, her, or it that certain forms required under Michigan law, referred to as Michigan "facing pages," had been inadvertently excluded from the Michigan Uniform Offering Circular. The March 19, 1992 letter included the previously omitted facing pages. Michigan Law, M.C.L. § 445.1531(2), required Cottman to provide each defendant with the option to rescind its license agreement as a result of Cottman's failure to include the facing pages in the original offering circular. The March 19, 1992 letter to each defendant stated in relevant part:

> If you are satisfied with the information that was provided you and the current status of your License Agreement, no further action on your part is necessary. Another option provided by Michigan Law, MCL 445.1531(2), is for you to pay Cottman all income received from the Center since the signing of the License Agreement in exchange for the return of the amount you paid to enter into the License Agreement, which in this instance was nothing. Your License Agreement would then revert back to an A–1 Transmissions license which Cottman would administer under its Management Agreement with A–1 Transmissions, Inc. This option must be exercised within thirty (30) days of receipt of this letter.

On April 6, 1992, counsel for defendants sent letters to Cottman on behalf of each of the defendants stating:

> This is to advise you of our acceptance of your March 19, 1992 offer to rescind our Licensing Agreement and the related

agreements in accordance with the requirements of MCL 445.1531(2). To the extent that offer to rescind is requesting or seeking concessions and/or commitments not required by MCL 445.1531(2), we are not agreeing to, or accepting, such concessions and/or commitments.

Pursuant to the provisions of MCL 445.-1531(2), we hereby tender to you all items received by us for the consideration and not sold. To insure a date certain for determination of our respective rights, the within recession is effective Wednesday, April 8, 1992.

On April 8, 1992, Cottman responded to defendants' purported acceptance of its offer to rescind with a letter to each defendant stating that the rescissions were invalid because they failed to comply with Michigan law. Specifically, Cottman claimed that (1) defendants failed to tender all income and other benefits received from the operation of the franchise from August 26, 1991, to present, (2) defendants failed to cure all breaches of the License Agreement and restore Cottman to the *status quo ante*, and (3) defendants failed to return to Cottman any of the materials provided to them in conjunction with the License Agreement, particularly those associated with the A–1 and Cottman trademarks and with advertising. The April 8, 1992 letter informed defendants that until these deficiencies were cured, Cottman considered the License Agreements to be in effect and expected defendants to continue to operate their businesses pursuant to the terms of those agreements.

On or about April 9, 1992, defendants ceased operating as A–1, A–1/Cottman or Cottman transmission centers and began operating competing transmission repair facilities. On April 10, 1992, Cottman instituted the instant actions alleging that the defendants conspired to violate Cottman's exclusive right to use the "A–1 Transmission" trademark and the "Cottman" trademark in the State of Michigan. Cottman alleges that defendants have exploited the goodwill of the Cottman mark and have caused confusion as to the origin of services provided by defendants. Cottman claims these acts constitute violations of

the Lanham Act (Count I), breach of covenant not to compete (Count II), tortious interference with existing and prospective contractual relations (Count III), unfair competition (Count IV), breach of contract (Counts V and VI), and various violations of Pennsylvania law (Count VII). Cottman seeks declaratory and injunctive relief as well as damages.

### (1) Defendants' 12(b)(1) Motion

Defendants' contend that Cottman has failed to allege a sufficient jurisdictional amount in controversy as to each defendant. Title 28 of the United States Code, § 1332(a), provides that district courts shall have diversity jurisdiction over only those cases in which "the matter in controversy exceeds the sum or value of $50,000.00, exclusive of interest and costs...." 28 U.S.C. § 1332(a). Where a single plaintiff's claims against more than one defendant are what Professor Moore refers to as "integrated," the amounts sought as to each defendant are aggregated to determine the jurisdictional amount in controversy. 1 J. Moore, *Moore's Federal Practice* ¶ 0.97[2] (2d ed. 1990). "Integrated" claims are claims "so tied together by combination or conspiracy, as to make the relief single in regard to the same...." *Id.* On the other hand, where a plaintiff alleges independent, several liability against more than one defendant, plaintiff's claims against each defendant must individually satisfy the amount in controversy requirement. *Id.;* 14A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3704, pp. 78–80 (2d ed. 1985 & 1991 Supp.).

In the instant case, the Court need not determine whether or not Cottman's claims are integrated or several since Cottman has submitted the affidavit of Edward Kelly in response to defendants' motion. Mr. Kelly's affidavit states, *inter alia*, that Cottman's claims against each defendant are well in excess of $50,000.00. (Exhibit "E" to Cottman's Opposition to Defendants Motion to Dismiss, May 4, 1992). On the basis of the Kelly affidavit and the Complaint, the Court has determined that Cottman has

made a sufficient showing to defeat defendants' motion to dismiss pursuant to Rule 12(b)(1).

**(2) Defendants' Motion Pursuant to Rule 12(b)(2)**

■■■ Defendants next contend that the Court lacks personal jurisdiction over them. This Court, as a federal district court located in the Commonwealth of Pennsylvania, may assert personal jurisdiction over a non-resident of Pennsylvania only to the extent authorized by the laws of Pennsylvania, and consistent with the United States Constitution. *Bane v. Netlink, Inc.,* 925 F.2d 637, 639 (3d Cir.1991), *citing* Fed.R.Civ.P. 4(e); *Provident National Bank v. California Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 436 (3d Cir.1987). The relevant jurisdictional statute in Pennsylvania provides that "the jurisdiction of the tribunals of this Commonwealth shall extend ... to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b).

■■■ The Due Process Clause of the Fourteenth Amendment to the United States Constitution limits a court's jurisdiction where its exercise would offend the " 'traditional conception[s] of fair play and substantial justice' " embodied in that amendment. *Burger King v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 2177–78, 85 L.Ed.2d 528 (1985), *quoting International Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945). The "constitutional touchstone" of due process analysis is "whether the defendant purposefully established 'minimum contacts' in the forum state." *Id.,* 471 U.S., at 474, 105 S.Ct., at 2183, *citing International Shoe,* 326 U.S., at 316, 66 S.Ct., at 158. If a defendant's intentional conduct and connection with a forum are such that the defendant should reasonably anticipate being haled into court there, the forum's exercise of jurisdiction over the defendant will not offend due process. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980). In *Burger King v. Rudzewicz,* the United States Supreme Court explains the relationship between the concepts of "minimum contacts" and "reasonable anticipation of being haled into court" as follows:

> In defining when ... a potential defendant should "reasonably anticipate" out-of-state litigation, the Court frequently has drawn from the reasoning of *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958):
>
>> "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."
>
> This "purposeful availment" requirement ensures that a defendant will not be haled into jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, *Keeton v. Hustler Magazine, Inc.,* 465 U.S. [770], at 774, 104 S.Ct. [1473], at 1478 [79 L.Ed.2d 790 (1984)]; *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S., at 299, 100 S.Ct., at 568, or of the "unilateral activity of another party or a third person," *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. [408], at 417, 104 S.Ct. [1868], at 1873 [80 L.Ed.2d 404 (1984)].

471 U.S., at 474–75, 105 S.Ct., at 2183. Jurisdictional due process analysis therefore must focus on the purposeful conduct of the defendant over whom the Court seeks to exercise jurisdiction.

Thus where the defendant "deliberately" has engaged in significant activities within a State, *Keeton v. Hustler Magazine, Inc.,* [ ] 465 U.S., at 781, 104 S.Ct., at 1481, or has created "continuing obligations" between himself and residents of the forum, *Travelers Health Assn. v. Virginia,* 339 U.S. [643], at 648, 70 S.Ct.

[927], at 929 [94 L.Ed. 1154 (1950)], he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Id.,* 471 U.S., at 475–76, 105 S.Ct., at 2184.

■ Once the Court has determined that sufficient contacts with the forum exist, it must consider those contacts in light of other factors to determine whether the assertion of jurisdiction comports with "fair play and substantial justice." *Id.,* 471 U.S., at 476, 105 S.Ct., at 2184, *citing International Shoe Co. v. Washington,* 326 U.S., at 320, 66 S.Ct., at 160. These other factors include:

> "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S., at 292, 100 S.Ct., at 564.

*Id.,* 471 U.S., at 476–77, 105 S.Ct., at 2184.

The Supreme Court and Congress have refrained from creating any bright-line formulas or mechanical tests for determining personal jurisdiction. Each case must be evaluated on its facts. For example, although a defendant's continued or prolonged physical presence within the forum would add force to a plaintiff's jurisdictional claim, the Supreme Court has "consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction." *Id.,* 471 U.S., at 476, 105 S.Ct., at 2184. Similarly, while a defendant's contract with a resident of the forum would also tend to support a finding of *in personam* jurisdiction, the Supreme Court has stated "[i]f the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot." *Id.,* 471 U.S., at 478, 105 S.Ct., at 2185.

The instant case presents a factual scenario quite similar to that presented in *Burger King.* Here, as in *Burger King,* none of the defendants established offices in or maintained significant physical ties with Pennsylvania. However, this franchise dispute grew directly out of a contract having substantial connections with Pennsylvania. *See id.,* 471 U.S., at 479, 105 S.Ct., at 2186. "Eschewing the option of operating an independent local enterprise, [defendants] deliberately 'reached out beyond' Michigan and negotiated with a [Pennsylvania] corporation for the purchase of a long-term franchise and the manifold benefits that would derive from affiliation with a nationwide organization." *Id.,* 471 U.S., at 479–80, 105 S.Ct., at 2186. As a result of their negotiations with plaintiff, defendants each entered into a fifteen-year franchise agreement with Cottman, envisioning continuing and wide-reaching contacts with Cottman in Pennsylvania. Defendants received license to use Cottman's confidential trade secrets, business procedures, technical advice, and operational guides, (Licensing Agreement, ¶ 6a), as well as to take advantage of the goodwill associated with the Cottman mark. (Licensing Agreement, ¶ 1). Defendants also made contractually required payments to Cottman in Pennsylvania on a weekly basis. (Licensing Agreement, ¶¶ 8–9). All of the defendants ordered parts and supplies from Cottman's Pennsylvania offices, (Mowry Affidavit, ¶ 3), and otherwise voluntarily accepted "long-term and exacting regulation" of their businesses by Cottman. (Licensing Agreement, ¶ 7); *Id.,* 471 U.S., at 479–80, 105 S.Ct., at 2186.

Furthermore, the Supreme Court in *Burger King* gives weight to the fact that in their franchise agreements the defendants in that case agreed that all disputes would be governed and construed under the law of the forum. In this case, the defendants not only agreed that the franchise agreement would "be governed and

construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania," but consented "to the jurisdiction and venue of any court of general jurisdiction of Philadelphia County or Montgomery County of Pennsylvania or the United States District Court for the Eastern District of Pennsylvania, and any legal proceedings arising out of this Agreement shall be brought only in such courts...." (Licensing Agreement, ¶ 27). These provisions, in combination with the factors discussed above, lead the Court to conclude that the defendants should have reasonably anticipated being haled into court in Pennsylvania.[1]

Accordingly, the Court concludes that the defendants established a substantial and continuing relationship with Cottman's Pennsylvania headquarters, and received fair notice that they might be subject to suit in Pennsylvania on the basis of their purposeful conduct as well as the express language of the franchise agreements into which they voluntarily entered. Minimum contacts having been established, and defendants having failed to demonstrate how jurisdiction in Pennsylvania would be otherwise fundamentally unfair, the Court concludes that its exercise of jurisdiction in this case does not offend due process. *See Burger King,* 471 U.S., at 487, 105 S.Ct., at 2190. Defendants' motion to dismiss for lack of personal jurisdiction will therefore be denied.

(3) Defendants' Motion to Dismiss Pursuant to Rule 12(b)(3)

■ Cottman relies on 28 U.S.C. § 1391(b)(2) as the basis for venue in this district, alleging that the Eastern District of Pennsylvania is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," and one in which "a substantial part of the property that is the subject of the action is situated." Based on the facts set forth above, as well as the factors considered in connection with defendants' motion to dismiss for lack of personal jurisdiction, the Court has determined that venue is proper in this district and will therefore deny defendants' motion to dismiss for lack of venue pursuant to Rule 12(b)(3).

(4) Defendants' Motion to Dismiss Count I Pursuant to Rule 12(b)(6)

■ Defendants claim that Cottman has failed to state a cause of action under the Lanham Act, specifically under §§ 1114 and 1125 of Title 15, and move to dismiss Count I pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In appraising the sufficiency of Cottman's complaint, the Court must follow "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Having reviewed the allegations in Count I of the Complaint, and having determined that it alleges a cause of action sufficient to withstand defendants' motion to dismiss, the Court will deny defendants' motion.

(5) Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1404(a)

■ Section 1404(a) of Title 28 states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

1. Defendants challenge the validity of the franchise agreement's forum selection clause in light of Michigan law, M.C.L. § 445.1527(f). As pointed out, the facts of *Burger King* are strikingly similar to those presented here. *Burger King* also involved an out-of-state franchisor attempting to establish personal jurisdiction over Michigan franchisees. Although the Michigan statute which defendant argues voids the forum selection provision here was in effect at the time *Burger King* was decided, it did not influence the Supreme Court's conclusion that the forum selection provision in that franchise agreement "reinforced [the defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there." *Id.,* 471 U.S., at 482, 105 S.Ct., at 2187. Whether or not valid, the forum selection clause entered into by the defendants clearly supports this Court's conclusion that the defendants should have reasonably anticipated being haled into court in this forum.

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988), *quoting, Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964). "The decision to transfer is in the court's discretion, but a transfer is not to be liberally granted." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970).

For the following reasons, the Court will deny defendants' motion to transfer: (1) Cottman chose the Eastern District of Pennsylvania as the forum. Although a motion to transfer requires consideration of a number of case-specific factors, "paramount" among these is the plaintiff's choice of forum. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970). (2) Each of the defendants, represented by counsel, entered into an agreement containing a forum selection clause, reproduced *supra,* at p. 844, which expressly contemplates that any litigation between the parties will take place in this district. Although only one factor in the multifaceted inquiry required by § 1404(a), "[t]he presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus." *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 2244–45, 101 L.Ed.2d 22 (1988). (3) Michigan law cannot preclude enforcement of the parties' forum-selection clause. Since "federal law, specifically 28 U.S.C. § 1404(a), governs the District Court's decision whether to give effect to the parties' forum-selection clause," any state law or policy to the contrary must yield. *Stewart,* 487 U.S., at 32, 108 S.Ct., at 2245. (4) The dispute between the parties appears to involve few, if any, factual issues, lessening, and possibly eliminating, costs related to the production of witnesses. (5) If a hearing and/or trial is required to dispose of this matter, it will likely be a very short one. Moreover, in light of the possibility that no genuine issues of fact exist, the parties may well chose to submit the matter to the Court on summary judgment. (6) All defendants are currently represented by a common counsel, located in Philadelphia. (7) Transfer of this matter would only serve to delay its ultimate resolution. Transfer creates administrative complications. The transferee court would have to take time to acquaint itself with the substance of the litigation. (8) The legal issues involved requiring the Court to interpret and apply Michigan law do not present an impediment to this Court's disposition of the matter.

Clearly, when great distance lies between opposing parties, one side may be faced with logistic inconvenience during the course of litigation. In the instant case, while recognizing that the defendants' understandably would prefer to litigate in Michigan, for the above reasons and in the interest of justice, the Court will honor the plaintiff's choice of forum and deny defendants' motion to transfer.

Accordingly, for the reasons hereinbefore set forth, (1) defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure will be denied, (2) defendants' motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) will be denied, (3) defendants' motion to dismiss for improper venue pursuant to Rule 12(b)(3) will be denied, (4) defendants' motion to dismiss Count I of plaintiff's complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) will be denied, (5) defendants' motion to transfer pursuant to 28 U.S.C. § 1404(a) will be denied, and (6) defendants' motion to consolidate pursuant to Rule 42(a) will be granted.