

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-20-1994

# Cottman Transm. Syst. v. Martino, et al.

Precedential or Non-Precedential:

Docket 94-1129

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Cottman Transm. Syst. v. Martino, et al." (1994). *1994 Decisions*. Paper 139.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/139

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————————

No. 94-1129

—————————

COTTMAN TRANSMISSION SYSTEMS, INC.,
a Pennsylvania Corporation,
                              Appellee
                    v.

LEONARDO MARTINO and TRANS ONE II, INC.,
a Michigan Corporation,
                              Appellants

—————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. No. 92-07245)

—————————

Argued July 14, 1994

Before:  SLOVITER, Chief Judge, ROTH and WEIS, Circuit Judges

Filed September 20, 1994

—————————

Anthony D. Rosati, Esquire (ARGUED)
Rosati Associates, P.C.
7115 Orchard Lake Road
Suite 140
West Bloomfield, MI  48322

Brad K. Robbins, Esquire
7614 Seminole Avenue
Melrose Park, PA  19126

Attorneys for Appellants

Todd P. Leff, Esquire (ARGUED)
Cottman Transmission Systems, Inc.
240 New York Drive
Fort Washington, PA  19034

Attorney for Appellee

—————————

OPINION OF THE COURT
_____

WEIS, Circuit Judge.

          In this breach of contract, unfair competition, and
Lanham Act case, we determine that venue does not lie in a
district where the individual defendant did not conduct his
business and did not carry out any infringing activities.
Therefore, a default judgment will be vacated, and the case will
be transferred to the district where the defendant resides and
carries on his business.  Even though the individual defendant's
wholly owned corporation, a co-defendant, may have waived an
objection to venue by failing to have an attorney appear on its
behalf, we will nevertheless vacate the judgment against the
company as well so that the entire action may be transferred to
the same district.

          Plaintiff Cottman Transmission Systems, Inc. is a
nationwide franchisor incorporated under the laws of Pennsylvania
and maintains its principal place of business in that state.
Cottman licenses the use of its trademark in connection with the
operation of transmission repair facilities throughout the United
States.  Defendant Leonardo Martino is a Michigan resident and
the sole stockholder of co-defendant Trans One II, Inc., a
Michigan corporation that operates a transmission repair business
in that state.

In 1988, Martino entered into a franchise agreement with A-1 Transmissions, Inc., also a Michigan corporation. Three years later, A-1 assigned its franchises to Cottman. In conformance with that assignment, Martino and Trans One executed a franchise agreement with Cottman on August 26, 1991. However, Cottman still asserted an ability to enforce the original A-1 agreement if necessary.

After some months of operation under the newly formed franchise, Cottman became dissatisfied with Martino's performance, particularly because of inaccurate reporting of sales and delinquent license fee payments. On March 4, 1992, Cottman filed suit against Martino and Trans One in the Court of Common Pleas of Montgomery County, Pennsylvania, alleging fraud and breach of the Cottman franchise agreement. Venue and jurisdiction in Montgomery County were established by a forum selection clause in the Cottman agreement, and judgment was entered against defendants by default.

Because the Cottman agreement signed by Martino and others failed to comply with a provision of a Michigan statute, Cottman offered its franchisees in April 1992 the opportunity to rescind their contracts. Martino asserts that he accepted that offer on April 8, 1992. Cottman disputes the date of termination, but concedes that by May, the Cottman-Martino agreement was no longer in effect. In the spring of 1992,

Martino and Trans One instituted suits against Cottman in the Michigan state courts.

On December 17, 1992, Cottman filed the present suit against Martino and Trans One in the United States District Court for the Eastern District of Pennsylvania, asserting three causes of action:

(1)  a violation of the Lanham Act by the defendants' unauthorized use of Cottman's trademarks after "Spring, 1992";

(2)  breach of the A-1 franchise agreement's covenant not to compete; and

(3)  unfair competition in the operation of a new transmission repair center in Michigan under the name of "U.S.A. Transmissions," which Martino and Trans One had formed in April 1992.

The Martino litigation was consolidated with several other suits previously brought by Cottman in the Eastern District of Pennsylvania against a number of its former Michigan franchisees.  Martino, appearing pro se, challenged personal and subject matter jurisdiction as well as venue in that district.  Trans One did not retain an attorney and, consequently, filed no pleadings recognized by the district court.  The district court, citing its earlier opinion in the cases against the Cottman franchisees, Cottman Transmission Sys., Inc. v. Metro Distrib., Inc., 796 F. Supp. 838 (E.D. Pa. 1992), held that venue was proper.

In the Metro case, the court cited the forum selection clause in the Cottman franchise agreement and rejected the defendants' objections to venue. As further support for its ruling, the district court referred to transactions between the parties such as payments made by the Michigan franchisees to Cottman in Pennsylvania, their ordering of parts and supplies from Cottman's Pennsylvania offices, and the fact that the franchisees "otherwise voluntarily accepted `long-term and exacting regulation' of their businesses by Cottman." Id. at 843 (citing Cottman License Agreement ¶ 7).

When Martino and Trans One failed to appear at a scheduled trial on the merits, defaults were entered against them on the claims set forth in Cottman's three-count complaint. After a hearing, the district court entered judgment on the Lanham Act count in the amount of $355,438 but declined to award damages on the counts that asserted breach of the A-1 contract and unfair competition, finding that an additional recovery would be "merely duplicative" of the relief already granted. The court also awarded attorneys' fees under the Lanham Act and enjoined Martino and Trans One from using the Cottman or A-1 trademarks.

On appeal, Martino and Trans One challenge a number of district court rulings. Because we find the venue question to be dispositive, we do not address the other alleged errors. See LeRoy v. Great W. United Corp., 443 U.S. 173, 180 (1979); Cameron v. Thornburgh, 983 F.2d 253, 257 n.3 (D.C. Cir. 1993).

In ruling on Martino's challenges to venue, the district court overlooked the important distinction between the case at hand and Metro. In that case, the suits were based on a breach of the Cottman franchise agreement, and its terms were critical. The pertinent provision stated that "[w]ith respect to any legal proceedings arising out of [the Cottman] Agreement, [franchisee] and COTTMAN consent to the jurisdiction and venue of . . . the United States District Court for the Eastern District of Pennsylvania, and any legal proceedings arising out of [that] Agreement shall be brought only in such court[] . . . ." Cottman License Agreement ¶ 27.

However, the present complaint against Martino does not arise under the Cottman franchise agreement, but under the A-1 franchise agreement and the Lanham Act. Any doubt on this point was removed when counsel for Cottman, in argument before the district court, stated: "[O]ur claim against Mr. Martino, which is before you, does not include any claim under the Cottman license agreement." Counsel explained his client's position to be that after the Cottman agreement was rescinded, Martino reverted to being a franchisee of A-1 Transmissions. Having taken an assignment from A-1, Cottman contended that it therefore had the right to enforce the A-1 franchise agreement. As counsel remarked, "We wish them to go back to the A-1 license."

Because the present suit does not arise under the Cottman franchise agreement, the choice of venue provision of

that contract has no application, and we delete it from further consideration.  The A-1 franchise agreement does not contain a forum selection clause, and we therefore look to the record to determine whether, under the pertinent statutory provisions, venue was proper in the Eastern District of Pennsylvania.

                                      I.

          28 U.S.C. § 1391(a)(2) provides that in diversity cases, suit may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  In actions that are not founded solely on diversity, the venue requirements can be found in § 1391(b).  See, e.g., Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club, Ltd., 1994 WL 423471, at *2 (7th Cir. Aug. 12, 1994) (trademark infringement); Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1392 (8th Cir. 1991) (same).  Section 1391(b)(2) repeats precisely the wording of section 1391(a)(2).

          Section 1391 was amended in 1990 by the Judicial Improvements Act of 1990 in response to a recommendation of the Federal Courts Study Committee.  See Report of the Fed. Courts Study Comm. 94 (Comm. Print 1990).  The Report pointed out that the reference in the earlier version of section 1391(b) to the district "in which the claim arose" led to wasteful litigation whenever several different forums were involved in the

transactions leading up to the dispute.  The House Report noted that the new language was in accord with that recommended earlier by an American Law Institute study.  See H.R. Rep. No. 734, 101st Cong., 2d Sess. 23 (1990), reprinted in 1990 U.S.C.C.A.N. 6860, 6869.

The amendment changed pre-existing law to the extent that the earlier version had encouraged an approach that a claim could generally arise in only one venue.  However, the current statutory language still favors the defendant in a venue dispute by requiring that the events or omissions supporting a claim be "substantial."  Events or omissions that might only have some tangential connection with the dispute in litigation are not enough.  Substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute.

The Federal Courts Study Committee's recommendation was based on the underlying aim of simplifying litigation rather than displacing the existing policy that showed due consideration for the defendant.  In that context, LeRoy v. Great W. United Corp., 443 U.S. 173 (1979) still retains viability.  There, the Supreme Court explained:  "In most instances, the purpose of statutorily specified venue is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial."  Id. at 183-84 (footnote omitted).  Although LeRoy was decided before the 1990 amendment, it is interesting that in

discussing venue, the Court weighed the "actions" taken in the District of Idaho before declaring the Northern District of Texas as an inappropriate situs for the litigation. Id. at 185-86.

The test for determining venue is not the defendant's "contacts" with a particular district, but rather the location of those "events or omissions giving rise to the claim," theoretically a more easily demonstrable circumstance than where a "claim arose." Although the statute no longer requires a court to select the "best" forum, Setco Enters. v. Robbins, 19 F.3d 1278, 1281 (8th Cir. 1994), the weighing of "substantial" may at times seem to take on that flavor.

In Cameron, 983 F.2d at 257, a suit brought against federal prison officials, the Court observed that "[i]t seems abundantly clear that the `events and omissions' relevant to this case took place predominantly" at the prison where the plaintiff was incarcerated. Consequently, that location was determined to be the proper venue for that case. Similarly, in Bates v. C & S Adjusters, Inc., 980 F.2d 865, 868 (2d Cir. 1992), the Court of Appeals for the Second Circuit concluded that the receipt of a challenged debt collection letter was "a substantial part of the events giving rise to a claim under the Fair Debt Collection Practices Act." The Court pointed out that the Act is intended to prevent the type of injury that did not occur and would not occur until receipt of the letter. Id. Therefore, the place where the letter was received was a proper venue.

In *Tefal, S.A. v. Products Int'l Co.*, 529 F.2d 495, 496 n.1 (3d Cir. 1976), we concluded that under the pre-1990 venue statute, "a cause of action for trademark infringement arises where the passing off occurs." See also *Indianapolis Colts*, 1994 WL 423471, at *2 (citing 4 J. Thomas McCarthy, *McCarthy on Trademarks and Intellectual Property* § 32.22(3)(b)(iii) (3d ed. 1994)); *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir. 1956). Under *Tefal*, if the infringement of a registered trademark occurred solely within one district, then only in that district would venue be proper. By the same token, however, if the infringement occurred in other districts as well, then venue could be proper in more than one district. *Tefal*, 529 F.2d at 497. The 1990 amendment to the venue statue did not necessarily shift the judicial focus away from the place of infringement for establishing proper venue in Lanham Act cases.

## II.

With this background, we proceed to examine the nature of the suit brought by Cottman against Martino and Trans One. The breach of contract count is based on the contention that the A-1 franchise had been assigned to Cottman and was revived after the recision of Cottman's own franchise. The A-1 agreement recites that it is deemed to have been made in Michigan and is to be construed in accordance with the law of that state.

Cottman also asserts that by operating a competing transmission facility under the name of "U.S.A. Transmissions"

beginning in the spring of 1992, Martino violated the non-competition clause of the A-1 agreement and engaged in unfair competition. Martino allegedly failed to remove A-1 advertising, signs, business cards, and continued to use the Cottman telephone numbers listed in the Michigan Bell yellow pages. The Lanham Act count is based on Martino's and Trans One's conduct after the spring of 1992 in their alleged unauthorized use of the Cottman and A-1 trademarks in connection with the operation of the U.S.A. Transmissions business in Michigan.

In asserting venue in the Eastern District of Pennsylvania, the complaint alleges that Martino and Trans One have "participated in conduct in this district and [have] caused plaintiff to suffer injury in this district." In its brief in this Court, Cottman asserts that there were three substantial acts and omissions that gave rise to its cause of action in the Eastern District of Pennsylvania, namely: (1) Martino was obligated to pay license fees to Cottman in Pennsylvania, but failed to do so; (2) he failed to return A-1 advertising items to Cottman in Pennsylvania;[1] and (3) Cottman prepared the Michigan Bell yellow page advertisements in Pennsylvania and from there caused them to be placed in the Michigan telephone directories.

---

[1]. In its brief, Cottman also asserts that Martino was required by the Cottman franchise agreement to return trademarked items to it in Pennsylvania. We will not consider this contention because it is contrary to plaintiff counsel's assertion in the district court that the case did not include any claims under the Cottman franchise agreement.

In assessing whether events or omissions giving rise to the claims are substantial, it is necessary to look at the nature of the dispute. The contract on which Cottman bases its state-law claims was executed and performed in Michigan. Martino's transmission repair center was located there. The telephone directories were issued and used there. Finally, the alleged unauthorized use of the trademarks at issue occurred in Michigan, not in Pennsylvania. It is obvious that most, if not all, of the significant events occurred in Michigan.

The omissions that Cottman cites -- Martino's failure to return various materials and failure to remit payments -- actually occurred in Michigan, not in Pennsylvania. Even though the result was Cottman's non-receipt of those items in Pennsylvania, the omissions bringing about this result actually occurred in Michigan. Although this conclusion may seem to hinge on a question of "whether the glass is half full or half empty," we fail to see how these omissions could "give rise" to the claims that Cottman presents.

The sole event in the Eastern District of Pennsylvania of possible relevance to this case was Cottman's preparation of advertisements for the Michigan Bell yellow pages. However, even this allegation is questionable because that work may have been performed solely in connection with the previously expired Cottman franchise, rather than that of A-1.

At any rate, as we held in Tefal, 529 F.2d at 496-97, the focus of our venue inquiry in a Lanham Act trademark infringement case is the location where the unauthorized passing off takes place -- whether that occurs solely within one district or in many. See also Dakota Indus., 946 F.2d at 1388 (discussing without deciding the issue). The district in which the infringed trademark was originally prepared or initiated is not determinative. The record does not support an assertion that Martino attempted to pass off the trademarks at issue in the Eastern District of Pennsylvania but, to the contrary, reveals that the alleged infringement occurred solely within the Eastern District of Michigan.

Cottman cannot rely on the fact that it prepared and placed the advertisements in the Eastern District of Pennsylvania as a basis for establishing venue in that district. In short, under 28 U.S.C. § 1391(b) and Tefal, venue in the Eastern District of Pennsylvania for Cottman's claim of trademark infringement has not been established.

The only events sufficiently substantial to give rise to Cottman's present causes of action occurred in the Eastern District of Michigan. Therefore, as to Martino, the objections to improper venue should have been sustained and the case transferred to Michigan. See Goldlawr, Inc. v. Heiman, 369 U.S. 463 (1962).

Martino's solely owned corporation, Trans One, stands on a somewhat different footing. In LeRoy, 443 U.S. at 180, the Court emphasized that venue is a personal privilege of the defendant and may be waived. See also Fed. R. Civ. Proc. 12(h)(1). As noted earlier, no attorney appeared for Trans One, and no objection to venue was filed on its behalf in the district court. Hence, Trans One may be said to have waived its objection to venue. However, the status of the judgment against it must be examined in light of the circumstances of this case.

28 U.S.C. § 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Dismissal would not have been appropriate on the record here, and as to Martino, the proper procedure would have been to transfer. Assuming that Trans One waived venue, the issue is whether the claims against it should also have been transferred along with the ones against Martino.

In the situation where venue is proper for one defendant but not for another and dismissal is inappropriate, the district court has a choice. One option is to transfer the entire case to another district that is proper for both defendants. Another alternative is to sever the claims, retaining jurisdiction over one defendant and transferring the case as to the other defendant to an appropriate district. See

<u>In re</u> <u>Fine Paper Antitrust Litig.</u>, 685 F.2d 810, 819 (3d Cir. 1982); 15 Charles Alan Wright et al., <u>Federal Practice & Procedure</u> § 3827, at 275-76 (1986 & Supp. 1994).

In <u>Sunbelt Corp. v. Noble, Denton & Assocs., Inc.</u>, 5 F.3d 28 (3d Cir. 1993), we adopted the position "that [the court] should not sever if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places." <u>Id</u>. at 33-34. (internal quotation omitted). When the conduct of a co-defendant as to whom venue is proper is central to the issues raised by the plaintiff against those subject to transfer, the grant of a severance would not ordinarily be consistent with the sound exercise of discretion. <u>See</u> <u>id</u>. at 34.

The facts in this case leave no room for doubt that Trans One, owned solely by Martino, is directly connected to the main issues, and accordingly, severance by the district court would not have been proper. We conclude, therefore, that the proper procedure in this case would have been to transfer the case in its entirety to the Eastern District of Michigan.

The final question to be addressed is the appropriate remedy in this case. We have indicated that only in rare instances will we invoke mandamus jurisdiction to review a transfer order. <u>See</u> <u>Carteret Sav. Bank, FA v. Shushan</u>, 919 F.2d 225, 232-33 (3d Cir. 1990). It is therefore unlikely that an

erroneous ruling on improper venue will be examined by this Court except on appeal. Even so, one Court has held that it would not reverse on the ground of improper venue after a judgment was entered on the merits, absent a showing of prejudice as a result of the erroneous ruling. See Whittier v. Emmet, 281 F.2d 24, 30-31 (D.C. Cir. 1960). The controlling factors in that case, however, were somewhat unique; the defendant was the United States government, and the dispute centered on a provision of a life insurance policy issued by the government. In those circumstances, venue was really only of academic interest. In Save Our Cumberland Mountains, Inc. v. Clark, 725 F.2d 1434 (D.C. Cir. 1984), reh'g en banc granted and vacated without op., No. 83-1224, slip op. (D.C. Cir. Apr. 23, 1984), and appeal dismissed per stipulation, No. 83-1224, slip op. (D.C. Cir. Nov. 6, 1984), the same Court found the Whittier reasoning not applicable in other circumstances.

In contrast, the Supreme Court in Olberding v. Illinois Cent. R.R., 346 U.S. 338 (1953), reversed a plaintiff's judgment because of improper venue even though the case had been tried to a jury. Justice Frankfurter characterized the venue issue as "a horse soon curried" and apparently had no difficulty with having a retrial. Id. at 340. In Gogolin & Stelter v. Karn's Auto Imports, Inc., 886 F.2d 100 (5th Cir. 1989) and United States ex rel. Harvey Gulf Int'l Marine Inc. v. Maryland Casualty Co., 573 F.2d 245 (5th Cir. 1978), the Court of Appeals for the Fifth

Circuit held that a judgment on the merits would be reversed or vacated and the cases remanded for transfer or dismissal if it is determined on appeal that venue was improper in the district court.  See also Bechtel v. Liberty Nat'l Bank, 534 F.2d 1335 (9th Cir. 1976); Lied Motor Car Co. v. Maxey, 208 F.2d 672 (8th Cir. 1953); cf. Michigan Nat'l Bank v. Robertson, 372 U.S. 591 (1963) (per curiam).

In this case, we cannot overlook the fact that Martino proceeded pro se, no counsel was engaged to represent Trans One, the judgments were obtained by default, defendants were not present during the hearing on damages, and a review of the record reveals that both Martino and Trans One have colorable defenses on liability and damages.  These circumstances persuade us that proceeding with the case in an improper forum had a substantially detrimental effect on defendants.  In these circumstances, we conclude that the interest of justice will best be served by vacating the judgment of the district court and transferring the entire case to the Eastern District of Michigan.

We have authority to transfer the case without imposing that task on the district court.  See, e.g., Minnette v. Time Warner, 997 F.2d 1023, 1026-27 (2d Cir. 1993); Cameron, 983 F.2d at 257; Cox Enters. v. Holt, 691 F.2d 989, 990 (11th Cir. 1982) (per curiam); Dr. John T. MacDonald Found., Inc. v. Califano, 571 F.2d 328, 332 (5th Cir. 1978) (en banc).

Accordingly, the judgments of the district court will be vacated, and the case will be transferred to the Eastern District of Michigan.

_____