The CHASE MANHATTAN
BANK, N.A., Plaintiff,

v.

Tom Rupert ALDRIDGE, an Underwriter
at Lloyd's, London, on Behalf of Him-
self and All Those Other Lloyd's Under-
writers Subscribing to Insurance Policy
No. 790/004A89005, Defendant.

Tom Rupert ALDRIDGE, an Underwriter
at Lloyd's, London, on Behalf of Him-
self and All Those Other Lloyd's Under-
writers Subscribing to Insurance Policy
No. 790/004A89005, Defendant and Plain-
tiff on Counterclaim,

v.

ARCHER SERVICES INC., and The
Chase Manhattan Bank, N.A.,
Defendants on Counterclaim.

No. 91 Civ. 2649.

United States District Court,
S.D. New York.

Nov. 2, 1995.

William Hart, New York City, for Plaintiff.

Joseph Powers, Sedgwick, Detert, Moran & Arnold, New York City, for Defendant and Plaintiff on the Counterclaim.

Robert Calinoff, Calinoff & Katz, New York City, for Defendant on the Counterclaim.

## REVISED OPINION AND ORDER

KOELTL, District Judge:

The defendant and plaintiff on the counterclaim, Tom Rupert Aldridge, an Underwriter at Lloyd's London, on behalf of himself and all those other Lloyd's Underwriters subscribing to Insurance Policy No. 790/004A89005 ("Lloyd's"), has moved for a determination of this Court's subject matter jurisdiction in this matter. For the reasons given below, the Court dismisses this action for lack of subject matter jurisdiction.

The plaintiff, Chase Manhattan Bank ("Chase"), commenced this action on April 17, 1991 against "Certain Underwriters at Lloyd's, London," alleging that this Court had subject matter jurisdiction over the action based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a). Section 1332(a) limits federal diversity jurisdiction to those actions "where the matter in controversy exceeds the sum or value of $50,000 ... and is between (1) citizens of a State and citizens or subjects of a foreign state...." There must be "complete diversity" among all parties such that no plaintiff and no defendant may be citizens of the same state. *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806); *Doctor's Assocs., Inc. v. Distajo,* 66 F.3d 438, 445 (2d Cir.1995).

Chase, a national banking association with its principal place of business in New York, stated in the Complaint that "[u]pon information and belief, defendants were at all relevant times and still are residents of England, with their principal places of business in and around London, England." (Complaint at ¶ 2.) On May 31, 1991, Chase stipulated to amend the caption of the action to substitute "Tom Rupert Aldridge, an Underwriter at Lloyd's, London, on behalf of himself and all those other Lloyd's Underwriters subscribing to Insurance Policy No. 790/004A89005" as the named defendant in place of "Certain Underwriters at Lloyd's, London." The Stipulation simplified the claims against the various individual underwriters, sometimes referred to as "Names," who were severally liable for their respective shares of any losses pursuant to the Policy at issue in this case. The Stipulation binds the Names in their several capacities to any liability against Al-

dridge. (Powers Aff. at ¶¶ 4–8, Exh. C; Foulger Decl. ¶ 17.)

In its Answer and Counterclaim dated June 4, 1991, the underwriter-defendants admitted the allegation in paragraph 2 of the Complaint. (Answer and Counterclaim at ¶ 2.) The defendants alleged that diversity of citizenship provided jurisdiction over their counterclaims. (Answer and Counterclaim at ¶ 30.) In the Complaint Chase also pleaded damages of $1,227,839.17, well above the amount in controversy requirement for jurisdiction based on diversity of citizenship. (Complaint ¶ 14.) The factual background of this case is set out more fully in the Court's prior decision dismissing Chase's third-party indemnification action for lack of subject matter jurisdiction. *See Chase v. Aldridge*, 906 F.Supp. 866, 867–68 (S.D.N.Y. 1995).

Although this action began in 1991, Chase only recently learned that complete diversity of citizenship might be lacking in this action. During a pretrial conference held on September 5, 1995, the defendants indicated for the first time that at times relevant to this action some of the underwriter-defendants may have been citizens of New York and other States of which, for the purposes of diversity of citizenship, Chase was also a citizen. Subject matter jurisdiction cannot be waived and the issue may be raised at any point during the litigation. *See Tongkook America, Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 786 (2d Cir.1994). As the party asserting that this Court has subject matter jurisdiction over this case, Chase bears the burden of proving that the matter is properly in federal court. *See McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 273 (2d Cir. 1994); *Travelers Ins. Co. v. Broadway West Street Assocs.*, Nos. 92 Civ. 5650, 92 Civ. 5651, 1994 WL 174242, at *5 (S.D.N.Y. May 5, 1994).

As a threshold matter, it is useful to review briefly the nature and structure of a Lloyd's syndicate. "Lloyd's of London" functions not as an insurance company but as a marketplace where investors buy and sell insurance risks. (Foulger Decl. ¶ 3.) These individual investors are referred to as "underwriters" or "Names," and operate as members of syndicates, which are simply groups of Names that underwrite insurance coverage for an insured. (Foulger Decl. ¶ 4–5.) There is no contractual relationship among members of a syndicate, between syndicates, or between the policyholder and a syndicate. (Foulger Decl. ¶ 6.) Rather, the Policy is an insurance contract entered by the insured and the respective Names. (Foulger Decl. ¶ 14.) For each syndicate there is an "active underwriter" who controls the risks for each Name in the syndicate which the active underwriter represents. (Foulger Decl. ¶ 8.) When the active underwriter accepts a percentage of risk, the Names are personally liable for any of the syndicate's losses. (Foulger Decl. ¶ 11.) Significantly, however, each Name is liable only for the fraction of the risk subscribed to by that Name. (Foulger Decl. ¶ 14.) As the Policy in this case provides, the individual underwriters are bound "each for his own part and not one for another ... and in respect to his due proportion only, to insure against any loss ... which shall be substantiated under this Policy...." (Powers Aff., Exh. A.)

At a conference held on September 22, 1995, Chase conceded that in this action the Court must consider the citizenship of all the underwriters in determining whether there is diversity of citizenship for jurisdictional purposes. (Tr. at 16.) While counsel for Lloyd's has urged this Court to accept a "trust" theory, under which the citizenship of "Lloyd's" would be measured only by the citizenship of the representative or active underwriter, every recent case addressing this issue has rejected the defendant's suggestion of a trust theory and has concluded that the citizenship of a Lloyd's syndicate is measured by the citizenship of the individual Names who are responsible for their proportional share of the specific insurance in question. *See Transamerica Corp. v. Reliance Ins. Co. of Illinois*, 884 F.Supp. 133 (D.Del. 1995); *Lowsley–Williams v. North River Ins. Co.*, 884 F.Supp. 166 (D.N.J.1995); *Bath Iron Works Corp. v. Certain Member Cos. of the Inst. of London Underwriters*, 870

F.Supp. 3 (D.Me.1994); *International Ins. Co. v. Certain Underwriters at Lloyd's London,* No. 88 Civ. 9838, 1991 WL 693319 (N.D.Ill. Sept. 16, 1991); *Queen Victoria Corp. v. Insurance Specialists of Hawaii, Inc.,* 711 F.Supp. 553 (D.Haw.1989). The Court agrees with the reasoning of these cases. Diversity can only exist if there is complete diversity between the plaintiff and each of the Names who are severally liable for their share of any losses under the Policy at issue. This result follows from the Supreme Court's decision in *Carden v. Arkoma Assocs.,* 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990), which found that an unincorporated association has no separate legal identity, and that for the purposes of diversity jurisdiction, its citizenship is the citizenship of each of its members.

■ It is now clear that complete diversity between the underwriter-defendants and the plaintiff Chase is lacking. Lloyd's submitted a sworn declaration of Nicholas Harris demonstrating that a total of 64 Names subscribing to the Policy currently reside in New York, 23 Names subscribing to the Policy currently reside in New Jersey, and 10 Names currently reside in Connecticut. This would be powerful evidence that some Names at the time of this action was commenced resided in those States.[1] Nevertheless, to remove any doubt, the Court directed Lloyd's to make further inquiry into the citizenship of the Names as of April 1991, even though Lloyd's only has records of underwriters' current addresses. Lloyd's thereupon produced additional evidence that some underwriter-defendants actually were citizens of New York at the time this action was brought. (Powers Aff.) At a conference held on October 26, 1995, Chase conceded that at the time it brought this action, there was at least one underwriter who was a citizen of a state of which Chase was also a citizen. Therefore, by its own admission Chase has failed to bear its burden to demonstrate that this Court possesses jurisdiction based on diversity of citizenship. This Court concludes that there is not complete diversity between the plaintiff and the underwriter-defendants.

■ In an effort to salvage jurisdiction, Chase now seeks to sever any nondiverse underwriters and to proceed only against the remaining defendant-underwriters individually. Accordingly, the Court next considers Chase's alternative motion pursuant to Fed.R.Civ.Pro. 15[2] and 21[3] to dismiss its claims against the nondiverse defendant-underwriters.

Even if it were possible for Chase to dismiss the nondiverse underwriter-defendants, this Court would still lack subject matter jurisdiction over this action. No claim against any one individual underwriter satisfies the jurisdictional amount requirement of 28 U.S.C. § 1332(a).

The parties disagree whether all of the Names are actually parties to this action. Chase maintains that all of the Names who were responsible for the Policy are parties represented by Aldridge, and seeks to dismiss the nondiverse Names. Lloyd's maintains that Aldridge, pursuant to the Stipulation, is the sole defendant, but a judgment against him will be binding on the remaining Names "in accordance with their due obligations under the Policy...." (Powers Aff., Exh. D.) Lloyd's maintains that the issue of diversity would have to be addressed by limiting the scope of the Names Aldridge is representing in this action. The distinction

1. Diversity jurisdiction is determined at the time the action is commenced. *See Maryland Casualty Co. v. W.R. Grace and Co.,* 23 F.3d 617, 622 (2d Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 655, 130 L.Ed.2d 559 (1994).

2. Fed.R.Civ.Pro. 15(a) provides that "leave [to amend] shall be freely given when justice so requires." The Second Circuit Court of Appeals has stated that "[a]pplying this liberal policy, we have permitted a plaintiff to amend his complaint to drop dispensable nondiverse defendants whose presence would defeat diversity of citizenship." *Jaser v. New York Property Ins. Underwriting Ass'n,* 815 F.2d 240, 243 (2d Cir.1987) (citing cases).

3. Fed.R.Civ.Pro. 21 provides:

Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

is not determinative on this motion because, as explained below, the evidence is clear that there is no Name as to which there is a sufficient jurisdictional amount to allow this action to proceed.

Pursuant to this Court's September 22, 1995 order, Lloyd's has reviewed the shares of the individual Names subscribing to the Policy at issue in this case to determine whether the amount in controversy against any one Name exceeds $50,000. Chase previously questioned how large the individual share of any individual Name was, and also raised the possibility that individual Names might belong to more than one syndicate and have several different shares of risk that could be aggregated.

The evidence shows that the total percentage of risk of the two individuals who have the largest share of risk with respect to the Policy, taking into account participation in all syndicates, is .001508 each. (Holland Decl. ¶ 5.) Given that in its complaint Chase alleges a loss of $1,227,839.17, exclusive of interest and costs, the amount in controversy with respect to each claim against these two individuals is $1,851.57. (Holland Decl. ¶ 6.) This amount falls far short of the jurisdictional amount section 1332 requires for diversity of citizenship jurisdiction. Even taking every possible recoverable amount into account, there is no conceivable way that the jurisdictional requirement is satisfied. Dismissal for failure to meet the jurisdictional amount is justified when, as here, it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938); *Tongkook America, Inc.*, 14 F.3d at 784.

■ Although at the October 26 conference Chase admitted that it was satisfied that no single underwriter could meet the jurisdictional amount, Chase argues that it can satisfy this amount in controversy requirement by aggregating its claims against the diverse underwriter-defendants. The claims cannot be aggregated, however, because the liability for the individual underwriters for their proportion of the risk is strictly several. The interest of each underwriter-defendant in this action is limited to the underwriter's individual share of the risk under the Policy. When liability among defendants is several, a plaintiff cannot aggregate its claims against individual defendants in order to satisfy the jurisdictional amount in controversy requirement of 28 U.S.C. § 1332. It must satisfy the jurisdictional amount with respect to each defendant. *See Dendinger v. Maryland Casualty Co.*, 302 F.2d 850, 851 (5th Cir.1962) (plaintiff cannot aggregate claims against two insurance companies that are severally but not jointly liable); *Crouch v. Atlas Van Lines, Inc.*, 834 F.Supp. 596, 604 (N.D.N.Y.1993) ("While the courts can aggregate all of the plaintiff's claims against one defendant to satisfy [the amount of controversy requirement of § 1332] ... or can aggregate claims against two or more defendants who are jointly liable ... it cannot aggregate the claims against two essentially separate individual defendants to reach this amount.") (citations omitted); *Congram v. Giella*, No. 91 Civ. 1134, 1992 WL 349845, at *3 (S.D.N.Y. Nov. 10, 1992) ("In a diversity case involving a single plaintiff and multiple defendants, aggregation of claims is not proper unless the liability to the plaintiff is common, undivided or joint. '[I]t is immaterial that the claims are transactionally related or that they arise from a common origin or document.'") (quoting 1 James W. Moore et al., *Moore's Federal Practice* ¶ 0.97[2] (2d ed. 1988)); *International Ins. Co. v. Certain Underwriters at Lloyd's London*, No. 88 Civ. 9838, 1991 WL 693319, at *9 n. 4 (N.D.Ill. Sept. 16, 1991) (noting that if Lloyd's syndicates "are not to be treated as entities, [the plaintiff's] claim against each syndicate member must meet the minimum jurisdictional amount, $10,000 at the time the suit was filed); *Uniroyal, Inc. v. Heller*, 65 F.R.D. 83, 87–88 (S.D.N.Y. 1974) (cannot aggregate claims against multiple defendants when liability is several); 1 James W. Moore et al., *Moore's Federal Practice* ¶ 0.97[2] (2d ed. 1995) ("Basically, aggregation is allowed when the defendants' liability to the plaintiff is common, undivided, or joint. It is not allowed when the defendants' liability is several, or if the claims against them are separate and distinct from one another.").

■ Chase argues that because its claims against all the underwriters are "integrated" claims, it can aggregate the individual amounts involved in its claims against each underwriter. Chase relies on *Cottman Transmission Systems, Inc. v. Metro Distributing, Inc.*, 796 F.Supp. 838, 841 (E.D.Pa. 1992), *vacated on other grounds sub nom. Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291 (3d Cir.1994), and *Travelers Ins. Co. v. Broadway West Street Assocs.*, Nos. 92–5650, 92–5651, 1994 WL 174242 (S.D.N.Y. May 5, 1994). Both *Cottman* and *Broadway West* state that a plaintiff may aggregate its claims against multiple defendants if those claims are integrated. Claims are integrated where they are "so tied together by combination or conspiracy, as to make the relief single in regard to the same." *Cottman*, 796 F.Supp. at 841; *see also Broadway West*, 1994 WL 174242, *7 (quoting *Cottman*). Both *Cottman* and *Broadway West* also clearly state, however, that "where a plaintiff alleges independent, several liability against more than one defendant, plaintiff's claims against each defendant must individually satisfy the amount in controversy requirement." *Id.* at 841.[4]

Chase maintains that its claims against the underwriter-defendants are integrated because these claims are transactionally related and stem from the same instrument. In *Thomson v. Gaskill*, 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942), the Supreme Court rejected a similar argument:

> Aggregation of plaintiffs' claims cannot be made merely because the claims are derived from a single instrument ... In a diversity litigation the value of the "matter in controversy" is measured not by the monetary result of the determining principle involved, but its pecuniary consequence to those involved in the litigation.

315 U.S. at 447, 62 S.Ct. at 675–76. *See also Uniroyal*, 65 F.R.D. at 88 (holding that liability of multiple defendants was several even though liability arose from same clause of same contract) (citing *Gaskill*); 1 *Moore's Federal Practice* ¶ 0.97[2] ("[I]t is immaterial that the claims are transactionally related or that they arise from a common origin or document. Aggregation depends upon the *nature of the defendants' liability* to the plaintiff, rather than on the source of the right to sue or transactional relatedness of the claims.") (emphasis in original) (citing *Gaskill*).

■ Chase also contends that its claims should be aggregated because the underwriter-defendants have agreed in a provision of the Policy to abide by the decision of any court holding against any one of them. This argument is also without merit. The Policy explicitly states that the underwriters are bound "each for his own part and not one for another ... and in respect to his due proportion only...." (Powers Aff., Exh. 1.) The Stipulation, which simplifies the claims against the Names by holding that any judgment or settlement entered in the action against Aldridge in his representative capacity shall be binding on each of the Names subscribing to the Policy, does not establish joint liability. Rather, it merely binds the Names in their several capacities to any liability established against Aldridge. Each Name remains liable only for a finite percentage of risk to which that underwriter has agreed to be responsible. "The apportionment of liability, if any, has been resolved as a matter of contract.... Each defendant's liability under the pro rata apportionment clause is distinct and independent." *Uniroyal*, 65 F.R.D. at 88.

■ The counterclaim must also be dismissed for lack of subject matter jurisdiction. Like the main action, the counterclaim alleged that the jurisdiction of this Court was based on diversity of citizenship. (Answer and Counterclaim at ¶¶ 30–33.) Lloyd's filed this counterclaim against Chase and Archer Services, Inc., demanding a judgment declaring that the 1989 insurance policy at issue

---

4. In *Cottman*, the court ultimately found it did not have to determine whether the claims were integrated or several because the plaintiff's claims against each defendant were in excess of $50,000. Although the court in *Broadway West* ultimately permitted the plaintiff to aggregate its claims against the defendants, the circumstances of that case, which concerned a foreclosure action against a mortgagee and other defendants claiming an interest in the property, render it inapposite here. *See* 1994 WL 174242, *7.

was validly rescinded because of misrepresentations the former third-party defendants Richard J. Kuh, KBS International Corporation, and KBS Brokerage Corporation ("Kuh/KBS") had allegedly made. The Court does not have subject matter jurisdiction over this action on the basis of diversity of citizenship because the individual underwriters, who are the plaintiffs on the counterclaim, and Chase and Archer, who are the defendants on the counterclaim, are not completely diverse. Furthermore, there is not a sufficient jurisdictional amount at issue for any of the Names to pursue the counterclaim individually. *See Motorists Mut. Ins. Co. v. Simpson,* 404 F.2d 511, 513 (7th Cir.1968) (in a declaratory judgment action, aggregation of the amounts in dispute between an insurer and defendants is not permitted when the insurer's liability is several); *Niagara Fire Ins. Co. v. Dyess Furniture Co., Inc.,* 292 F.2d 232, 233 (5th Cir.1961) (severally liable plaintiffs seeking declaratory judgment may not aggregate their demands in order to satisfy the jurisdictional-amount requirement); 1 *Moore's Federal Practice* ¶ 0.95 (rules concerning the aggregation of claims are equally applicable to declaratory judgment actions); *see also Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973) (holding that multiple plaintiffs with separate and distinct claims must satisfy jurisdictional-amount requirement for diversity suits); *Hunt v. Washington Apple Advertising Comm'n,* 432 U.S. 333, 346, 97 S.Ct. 2434, 2443, 53 L.Ed.2d 383 (1976) (finding it unnecessary to reach the question of whether plaintiffs in a declaratory judgment action could aggregate their claims to satisfy the jurisdictional-amount requirement for diversity jurisdiction).

Because the potential liability of the individual Names is several, and no claim against any individual Name could meet the jurisdictional amount requirement, there is no diversity jurisdiction in this case for either the main action or the counterclaim against Chase and third-party defendant Archer Services. Accordingly, both the claim and the counterclaim must be dismissed for lack of subject matter jurisdiction.

For the foregoing reasons, the Court finds that it lacks subject matter jurisdiction over this action. Accordingly, the Court dismisses the complaint and the counterclaim for lack of subject matter jurisdiction. The Clerk is directed to enter judgment dismissing both the claim and the counterclaim and closing the case.

**SO ORDERED.**