**Thomas F. BANE, Appellant**

v.

**NETLINK, INC.**

No. 90–1417.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit Rule 12(6) Nov. 5, 1990.

Decided Jan. 31, 1991.

Alan B. Epstein, Jablon, Epstein & Wolf, Philadelphia, Pa., for appellant.

Jason Berger, Jin–Kyung Kim, Testa, Hurwitz & Thibeault, Boston, Mass., Alan L. Yatvin, Popper & Yatvin, Philadelphia, Pa., for appellee.

Before SLOVITER, SCIRICA and ALITO, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

This is an appeal from the district court's order denying reconsideration of its order dismissing Thomas Bane's complaint due to lack of personal jurisdiction over defendant Netlink, Inc. Plaintiff also seeks to appeal the court's order denying his motion to transfer the action to another federal district court.

### I.

Appellant Thomas F. Bane worked as a salesperson for appellee Netlink, Inc., from July 1984 until he was discharged in September 1987, at the age of 56. For the first year of his employment, Bane worked out of his home in Sewickley, Pennsylvania. In September 1985 he was transferred to Netlink's sales office in Boston, Massachusetts. In early 1987, Netlink informed Bane that it intended to open an office in Philadelphia, Pennsylvania, and that the company wanted him to move there to establish the office. Bane leased a house and prepared to move to Philadelphia, but in September 1987, Netlink notified Bane that he was discharged.

Bane filed this complaint in the District Court for the Eastern District of Pennsylvania, alleging that Netlink fired him solely because of his age in violation of, *inter alia*, the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634 (1988). According to the complaint, during his employment with Netlink, Bane was the company's oldest salesperson.

Netlink moved to dismiss Bane's complaint for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). In support, Netlink filed a memorandum and accompanying affidavit which stated that it is a Delaware corporation with its principal place of business in North Carolina; has never established an office in Pennsylvania; has had no employees located in Pennsylvania since Bane left in 1985; and has

not owned property and does not pay taxes or advertise in Pennsylvania, though its products are sold in the state and its employees occasionally travel to Pennsylvania on business. The affidavit also stated, "[i]n September 1984, Netlink obtained authorization to conduct business in Pennsylvania. Netlink ceased conducting business in Pennsylvania on or about June 30, 1987 and withdrew its authorization to conduct business in Pennsylvania on or about December 21, 1988." App. at 13.

Although Netlink's affidavit does not specify the statute under which it was authorized to do business in Pennsylvania, we assume that it was under 15 Pa.Stat.Ann. §§ 2001–2007 (Purdon 1967) (repealed 1988).

The district court granted Netlink's motion and dismissed Bane's complaint without prejudice on March 26, 1990. Bane served a timely motion under Fed.R.Civ.P. 59(e) to amend the judgment and transfer the action to the District of Massachusetts. The district court denied that motion on May 8, 1990. Bane filed a timely notice of appeal on May 31, 1990.[1]

### II.

■ Because the ADEA does not provide a means for service of process, a federal court may exercise personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state. Fed.R.Civ.P. 4(e); *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 436 (3d Cir. 1987). In Pennsylvania, the applicable statute provides that "the jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the

scope of section 5301 ... to the fullest extent allowed under the Constitution of the United States." 42 Pa.Cons.Stat.Ann. § 5322 (Purdon 1981).

■ The Supreme Court has held that when a controversy is related to or arises out of the contacts defendant purposefully established in the forum state, the forum may constitutionally assert jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). On the other hand, due process is also not offended by the assertion of jurisdiction when the defendant has maintained continuous and substantial forum affiliations, whether or not the cause of action is related to those affiliations. *Id.* at 414–16, 104 S.Ct. at 1872–73; *see also North Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 690 n. 2 (3d Cir.) (per curiam), *cert. denied,* — U.S. ——, 111 S.Ct. 133, 112 L.Ed.2d 101 (1990).

In *Provident National Bank*, we stated that the plaintiff bears the burden of proof once a defendant raises a jurisdictional defense, 819 F.2d at 437, and "must establish either that the particular cause of action sued upon arose from the defendant's activities within the forum state ('specific jurisdiction') or that the defendant has 'continuous and systematic' contacts with the forum state ('general jurisdiction')." *Id.* (quoting *Helicopteros* 466 U.S. at 414, 416, 104 S.Ct. at 1872, 1873).

■ The district court in this case held that it did not have specific jurisdiction over Netlink because Bane's claim did not arise out of Netlink's activities taking place in Pennsylvania, and that it did not have general jurisdiction because Netlink's busi-

---

1. Bane served his motion for reconsideration of the denial of his motion to amend on May 15, 1990, and filed it the next day. That motion cannot be treated as a Rule 59(e) motion to toll the time for taking an appeal under Fed.R. App.P. 4(a)(4) as to the order of dismissal because it would then be a prohibited motion for *re*-reconsideration. *See Turner v. Evers*, 726 F.2d 112, 114 (3d Cir.1984) (second motion for reconsideration will not toll time for taking appeal under Fed.R.App.P. 4(a)(4)); *cf. Rosen v. Rucker*, 905 F.2d 702, 707 n. 5 (3d Cir.1990) (second motion which is first request for reconsideration of issue arising only after court's original order treated as a Rule 59(e) motion for purposes of Fed.R.App.P. 4(a)(4) when it is first opportunity to reconsider issue (in that case, delay damages)). Because we do not reach the transfer issue, we need not discuss whether the May 15, 1990 motion should be treated as a Rule 59(e) motion on the denial of transfer order, except to caution that, if so treated, a second notice of appeal following the order denying the motion would have been necessary to preserve the appeal on the transfer issue.

ness contacts in the state were not continuous and systematic enough to cause Netlink to reasonably expect it could be haled into a Pennsylvania court. The court evidently adopted Netlink's argument that, where the cause of action does not arise out of such minimum contacts as product sales, a defendant's continuous and systematic contacts must be established by such business activities as substantial product sales, business trips to the state by employees, or the maintenance of an office.

In so holding, the court failed to consider the effect of Netlink's application for and receipt of authorization to do business in Pennsylvania, as conceded in Netlink's own affidavit. Pennsylvania law explicitly states that the qualification of a foreign corporation to do business is sufficient contact to serve as the basis for the assertion of personal jurisdiction. The relevant statute provides:

> (a) General rule.—The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person ...:
>
> .   .   .   .   .
>
> (2) *Corporations.*—
>
> (i) Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth.
>
> (ii) Consent, to the extent authorized by the consent.
>
> (iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth.

42 Pa.Cons.Stat.Ann. § 5301 (Purdon 1990). We need not decide whether authorization to do business in Pennsylvania is a "continuous and systematic" contact with the Commonwealth for purposes of the dichotomy between "general" and "specific" jurisdiction because such registration by a foreign corporation carries with it consent to be sued in Pennsylvania courts.

Netlink applied to do business in Pennsylvania and received authorization to do so from 1984 through 1988. During this period and at the time Bane's cause of action arose, Pennsylvania law required that a foreign corporation seeking a certificate of authority to do business in the Commonwealth must have agreed, *inter alia,* to "[a] designation of the Secretary of the Commonwealth ... as the true and lawful attorney of the corporation upon whom all lawful process in any action against it may be served ... [with] the same legal force and validity as if served on the corporation...." 15 Pa.Stat.Ann. § 2004(6) (Purdon 1967) (repealed 1988).

By registering to do business in Pennsylvania, Netlink " 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)). Indeed, we recognized the significance of an application to do business on assertion of personal jurisdiction over the foreign corporation in *Provident National Bank,* a case on which Netlink relies. In that case, because the defendant, a California savings and loan being sued in the Eastern District of Pennsylvania, "had not applied to do business in Pennsylvania," 819 F.2d at 436, we were obliged to look to the question of its business activities in Pennsylvania. *Id.* at 438.

It is of no consequence for this purpose that Netlink withdrew its authorization to do business in Pennsylvania before Bane filed this suit. The statute in effect at the time Netlink received its certificate of authority provided that the designation of the Secretary of the Commonwealth as agent for service "shall continue in force as long as any liability remains outstanding against the corporation in this Commonwealth." 15 Pa.Stat.Ann. § 2004(6) (repealed 1988). A comparable provision appears in the successor statute, which provides that, "[d]iscontinuance of the [qualification as a foreign corporation under the laws of this Commonwealth] shall not affect jurisdiction with respect to any act, transaction or omission occurring during the period such status existed." 42 Pa.

Cons.Stat.Ann. § 5301(b) (Purdon 1990). Bane's discharge, which forms the basis of this suit, occurred while Netlink was qualified to do business in Pennsylvania.

Alternatively, Netlink's application for a certificate of authority can be viewed as its consent to be sued in Pennsylvania under section 5301(a)(2)(ii), which explicitly lists "consent" as a basis for assertion of jurisdiction over corporations. Consent is a traditional basis for assertion of jurisdiction long upheld as constitutional. *See Hess v. Pawloski*, 274 U.S. 352, 356–57, 47 S.Ct. 632, 633, 71 L.Ed. 1091 (1927); *see also Dehne v. Hillman Inv. Co.*, 110 F.2d 456, 458 (3d Cir.1940) ("by applying for a certificate of authority and designating the Secretary of the Commonwealth as its attorney for process, the [defendant, a Delaware corporation] ... must therefore be held to have consented to be sued in" federal court in Pennsylvania).

We hold that because Netlink was authorized to do business in Pennsylvania, it was subject to the exercise of personal jurisdiction by Pennsylvania courts under section 5301(a)(2)(i) or (ii). The predecessor statute, section 2004(6), gave Netlink notice that was subject to personal jurisdiction in Pennsylvania and thus it should have been "reasonably able to anticipate being haled into court" in Pennsylvania. *Provident*, 819 F.2d at 437. It follows that the district court erred when it held that it did not have personal jurisdiction over Netlink. Under these circumstances, we do not reach the transfer issue.

### III.

For the foregoing reasons, we will reverse the district court's order granting the defendant's motion to dismiss for lack of personal jurisdiction and remand this matter to the district court for further proceedings consistent with this opinion.