2018 PA Super 267

| KENNETH MURRAY, ROBERT | : | IN THE SUPERIOR COURT OF |
| SCHNALL, MICHAEL SCOTT, JOHN | : | PENNSYLVANIA |
| SENESE, JOHN SHURINA,  JOHN | : | |
| SIGNORILE, KEVIN SOKOL, | : | |
| ANTHONY TRICARICO, FRANK | : | |
| VENTRELLA, JOSPH VITALE, PATRICK | : | |
| VOGT, HENRY WHITE, WILLIAM | : | |
| WHITE, THOMAS WOSKA AND | : | |
| WILLIAM YOUNGSON, | : | No. 2105 EDA 2016 |
| | : | |
| Appellants | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| AMERICAN LAFRANCE, LLC AND | : | |
| FEDERAL SIGNAL CORPORATION | : | |

Appeal from the Order May 25, 2016
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  November Term, 2015 No. 02536

| ANDREW BURNS, DOUGLAS | : | IN THE SUPERIOR COURT OF |
| KALBACHER, MICHAEL KOZAK, | : | PENNSYLVANIA |
| KEVIN KUBLER,  JAMES LEMONDA, | : | |
| JOSEPH LOCHER, PATRICK LYONS, | : | |
| JOHN P. MALLEY, JOE | : | |
| MASTERSON, BRIAN MCDADE, | : | |
| KEVIN MCENERY, WILLIAM | : | |
| MONTEVERDE, VINCENT MOSCA, | : | |
| GERARD MURTHA, KEITH | : | No. 2106 EDA 2016 |
| PALUMBO, JOEL PATTI, RICHARD | : | |
| PEITLER, DONALD REILLY, MARIO | : | |
| ROSATO, ROBERT RYAN AND | : | |
| FRANCIS TRAPANI | : | |
| | : | |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |

```
                                      :
     AMERICAN LAFRANCE, LLC AND     :
     FEDERAL SIGNAL CORPORATION
```

Appeal from the Order May 25, 2016
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  November Term, 2015 No. 02494

| | | |
|---|---|---|
| MIGUEL MORENO, NEIL MULLINS, JOHN NEVOLA, ROBERT O'FLAHERTY, JAMES O'ROURKE, MICHAEL PAGLIUCA, SAMUEL PANASCI, RONALD PATTILIO, JOEL PERECA, DANIEL PERITORE, VINCENT PINTO, CHRISTOPHER RAMOS, ROBERT REICH, ROCCO RINALDI, JAMES RUSSO, GREGORY SALONE, JAMES SAVARESE, WILLIAM SCHEU, KENNETH SMITH, JOHN SULLIVAN AND WARREN TERRY | : : : : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br>No. 2107 EDA 2016 |
| Appellants | : : : : | |
| v. | : : : : | |
| AMERICAN LAFRANCE, LLC AND FEDERAL SIGNAL CORPORATION | : : | |

Appeal from the Order May 25, 2016
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  November Term, 2015 No. 02522

| | | |
|---|---|---|
| MICHAEL FELDMAN, RONALD FERRANTE, CHARLES FEYH, DONALD FLORE, JOHN FORTUNATO, FRANK GACCIONE, ROBERT GLEISSNER, JAMES HELFRICH, FRANK INGOGLIA, ROBERT LABATTO, JOHN LILLIS, THOMAS LYONS, EUGENE MAHLSTED, JAMES MASONE, EDWARD MAURO, SEAN MCCOYD, | : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br><br><br>No. 2108 EDA 2016 |

| | | |
|---|---|---|
| JOHN MCGONIGLE, EUGENE MCGOWAN, JR., JOHN MCLAUGHLIN, ERIC  MICHELSEN AND PAUL MILLER | : : : : | |
| Appellants | : : : : | |
| v. | : : : : | |
| AMERICAN LAFRANCE, LLC AND FEDERAL SIGNAL CORP. | : : | |

Appeal from the Order May 25, 2016
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  November Term, 2015 No. 02514

| | | |
|---|---|---|
| RICHARD BARBARISE, JAMES BERGHORN, STEVEN BERNIUS, VASILIOS CHRISTODOULOU, GAETANO DIMAURO, JOHN FLYNN, WILLIAM GRAHAM, PETER GUNTHER, THOMAS LORELLO, JAMES MANGRACINA, NORMAN MARSTON, JOSEPH MAURER, ROBER MCGUIRE, ROBERT  MOCCIA, JOHN MORABITO WILLIAM MUNDY, STANLEY PEACOCK, SALVATORE ROSINA, DONALD RUDDEN, THOMAS SCALLY, ROBERT SCHULTZ, PATRICK SCHWEIGER, RICHARD SCOTT, FRANK SFORZA, PATRICK SHANNON, EDMUND SULLIVAN, FREDERICK SUTTON, FRANCIS ULMER, RICHARD WALIGOVSKA, PAUL WEIS, JUSTIN WERNER AND RUDY WICKLEIN | : : : : : : : : : : : : : : : : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : : | |
| v. | : : : : | |
| AMERICAN LAFRANCE, LLC AND FEDERAL SIGNAL CORPORATION | : : | |

With No. 2109 EDA 2016 appearing aligned at ROBERT MOCCIA, JOHN MORABITO row.

- 3 -

J-A22039-17

Appeal from the Order May 25, 2016
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  December Term, 2015 No. 000187

| ROOSEVELT ADAMS, ANTHONY ASARO, EUGENE BIANCONE, SALVATORE BONGIOVANNI, STEPHEN BROWN, MICHAEL CAIN, ROBERT CANZONERI, MICHAEL CARLIN, RAYMOND CLANCY, CASEY COLWELL, ROBERT CONDON, CHRISTIAN CORBIN, THOMAS COURTENAY, DANIEL COYLE, RAYMOND CREEDE, AUSTIN CSORNY, FRANK DEANGELO, PATRICK DIMICHELE, JOHN DRISCOLL AND KENNETH ERB | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2110 EDA 2016 |
| | : | |
| | : | |
| | : | |
| | : | |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AMERICAN LAFRANCE, LLC AND FEDERAL SIGNAL CORPORATION | : | |

Appeal from the Order May 25, 2016
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  November Term, 2015 No. 002490

| RICHARD ABBOTT, VINCENT ANZELONE, RICHARD BURBAN, DANIEL BUTLER, EDWARD CACHIA, VICTOR CARLUCCI, JOSEPH CLERICI, DERMOTT CLOWE, FRED CORTESE, ANTHONY CUMMO, STEVEN FERRARO, ROCCO FERTOLI, DAVID FISCHBEIN, CHARLES FORTIN, STEVEN GRECO, GARY HOEHING, WILLIAM HOPKINS, GREGORY HORAN, SCOTT HUMMEL, JOSEPH INGRISANI AND RONALD PATTILIO | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2111 EDA 2016 |
| | : | |
| | : | |
| | : | |

- 4 -

J-A22039-17

|  |  |  |
|---|---|---|
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AMERICAN LAFRANCE, LLC AND | : | |
| FEDERAL SIGNAL CORPORATION | : | |

Appeal from the Order May 25, 2016
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  November Term, 2015 No. 002492

BEFORE:   BOWES, J., LAZARUS, J., and PLATT*, J.

DISSENTING OPINION BY BOWES, J.          **FILED SEPTEMBER 25, 2018**

I respectfully dissent.  This case does not involve Pennsylvania in any meaningful way.   Appellants, who comprise several plaintiffs from Massachusetts, New York, and Florida, sued Federal Signal Corporation ("Appellee"), a Delaware company with its principal place of business in Illinois, for injuries that allegedly occurred in New York.  Appellants' pleading failed to establish the grounds for Pennsylvania to exercise personal jurisdiction over the out-of-state Appellee.  Therefore, I believe that the trial court properly sustained Appellee's preliminary objection to the complaint and dismissed the claims against it for lack of personal jurisdiction.[1]

_____

[1] Appellants initially sued six different companies; however, the claims against all of the defendants except Appellee were either dismissed with prejudice or withdrawn.

*   Retired Senior Judge assigned to the Superior Court.

First, as Appellants neglected to assert in the trial court the particular ground for personal jurisdiction that it now raises on appeal, the current argument is waived. Thus, unlike my learned colleagues, I would not address Appellants' fresh claim that Pennsylvania has general personal jurisdiction over Appellee due exclusively to its 1969 registration with the Pennsylvania Department of State as a foreign corporation pursuant to 15 Pa.C.S. § 411(a). Second, to the extent that this issue could be construed as being properly before us notwithstanding Appellants' defective pleading and failure to raise it below, for the reasons I explain *infra*, this claim fails due to the fact that the section of the long-arm statute[2] that is the lynchpin of Appellants' argument did not exist when Appellee registered as a foreign corporation. Accordingly, Appellee cannot be deemed to have consented to general personal jurisdiction.

In addition to expounding upon the foregoing reasons for my dissent, I write independently to highlight the incompatibility of the jurisdiction-by-registration construct where, as here, Pennsylvania has absolutely no connection to either party or the cause of action. I concede that jurisdiction via registration was affixed to our jurisprudence following this Court's recent holding in **Webb-Benjamin, LLC v. International Rug Group**,__ A.3d __, 2018 PA Super 187 (filed June 28, 2018), which adopted the consent analysis first proffered by the Third Circuit Court of Appeals in **Bane v. Netlink, Inc.**,

---

[2] 42 Pa.C.S. § 5301(a)(2)(i), defined *infra*.

925 F.2d 637 (3d Cir. 1991), and reiterated by a Pennsylvania district court in **Bors v. Johnson & Johnson**, 208 F.Supp.3d 648 (E.D. Pa. 2016). However, I believe that the present case underscores the conceptual flaw in perpetuating a legal fiction that blindly equates the administrative act of registration as a foreign corporation with express consent to general personal jurisdiction.

Stated plainly, I believe that the federal jurisprudence underpinning the **Webb-Benjamin** Court's decision is flawed. The core principle therein, that registration is tantamount to consent to personal jurisdiction, is incongruous with the fundamental aspect of due process that our Supreme Court first highlighted in **International Shoe Co. v. Washington**, 326 U.S. 310, 319 (1945), *i.e.*, protecting an individual's liberty interest against being subjected to binding judgments in a foreign forum with no meaningful relationship. In my view, our current jurisprudence, which founds general personal jurisdiction upon a foreign corporation's compliance with a mandatory registration requirement, falls short of this constitutional threshold.

Principally, I believe that Appellants' current argument is waived pursuant to Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal"). I reject the majority's explanation for excusing Appellants' failure to assert this novel basis for personal jurisdiction at any point before the trial court dismissed their complaint. In overlooking Appellants' omission below, the majority elected to

frame the issue in relation to Appellee's preliminary objections. Essentially, it reasoned that since Appellee was the moving party, Appellants were not required to proffer any response to Appellee's preliminary objections. *See* Majority Opinion at 7-8 (citing *Dixon v. Northwestern Mutual*, 146 A.3d 780 (Pa.Super. 2016)) (regarding a nonmoving party's ability to challenge on appeal the basis for sustaining a preliminary objections in the nature of a demurrer). The majority's statement of the law is accurate as it relates to the parties' respective burdens during preliminary objections. However, its abridged analysis is incomplete insofar as that rationale ignores the controlling question regarding Appellants' obligation to plead a proper basis for Pennsylvania to exercise personal jurisdiction over the foreign corporation, which they inarguably failed to do.

Significantly, neither *Dixon* nor the case that this Court cited in support of its holding therein, *Uniontown Newspapers, Inc. v. Roberts*, 839 A.2d 185, 190 (Pa. 2003) (overruling the Commonwealth Court order entered in original jurisdiction action that sustained preliminary objection in the nature of a demurrer), addressed Rule 302(a) waiver in relation to personal jurisdiction. *Dixon* concerned the waiver of an argument challenging a demurrer to potentially incompatible causes of action in a civil complaint. Therein, we reiterated our High Court's ensconced holding in *Uniontown Newspapers* that the non-moving party to preliminary objections is not required to defend the legal sufficiency of the claims actually raised in the

complaint. We continued, "as long as a plaintiff asserts in a complaint a cause of action, the plaintiff may assert any legal basis on appeal why sustaining preliminary objections in the nature of a demurrer was improper." *Id*. at 784. I believe that the above-cited principle is inapplicable where, as here, the issues relate to a trial court's fundamental authority to enter judgment against a defendant, as opposed to a demurrer or the legal sufficiency of a pleading that is at least facially compliant.

As we explained in *Sulkava v. Glaston Finland Oy*, 54 A.3d 884 (Pa. Super. 2012), when addressing a challenge to personal jurisdiction, the trial court considers the evidence in the light most favorable to the non-moving party. However, "[o]nce the moving party supports its objections to personal jurisdiction, **the burden of proving personal jurisdiction is upon the party asserting it**." *Id*. at 889 (emphasis added); *see also Webb-Benjamin*, *supra* at *2 (same). Thus, the non-waiver principles discussed in *Dixon* and *Uniontown Newspapers* are inapposite. Stated another way, regardless of whether Appellants were compelled to respond to Appellee's preliminary objection, once Appellee supported its objection to the Pennsylvania court's personal jurisdiction over it as an out-of-state defendant, the burden shifted to Appellants to prove otherwise. The consequence of Appellants' failure to satisfy **their** burden of proving this Commonwealth's personal jurisdiction was the dismissal of their claim. Hence, in this context,

the majority's invocation of **Dixon** and **Uniontown Newspapers** is unavailing.

Presently, Appellants' pleadings asserted jurisdiction based upon Appellee's alleged continuous and systematic contacts with Pennsylvania. However, as the trial court accurately determined, those contacts simply do not exist. As Appellants failed to assert any valid grounds for Pennsylvania to exercise personal jurisdiction over Appellee, including the grounds Appellants seek to assert for the first time on appeal, the trial court properly dismissed the claims against Appellee. Having failed to establish personal jurisdiction below, I believe that Rule 302(a) prohibits Appellants from attempting to assert for the first time on appeal an alternative basis for the court to invoke jurisdiction.

Moreover, assuming *arguendo* that **Dixon** did somehow shield Appellants from waiver, I believe that it is improper to manufacture general personal jurisdiction over an out-of-state corporation from a single, statutorily mandated, organizational document that was filed with the Commonwealth approximately forty-seven years ago. As I outlined *supra*, the exercise of general jurisdiction based solely on the mandatory registration to conduct business in a state treads perilously close to violating the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Thus, rather than the wholesale adoption of the federal court's jurisprudence outlined in **Bors** and **Bane**, unquestioningly and without critical analysis, I would require

Appellants to adduce some evidence of contacts with Pennsylvania that comport with the due process requirements that the United States Supreme Court highlighted in **Burger King Corp. v. Rudzewicz**, 471 U.S. 462 (1985).

In **Burger King**, the High Court explained that the Due Process Clause restricted a state's authority to exercise personal jurisdiction over non-resident defendants. **Id**. at 471-72. The Court emphasized that a state's personal jurisdiction over a foreign defendant is dependent upon "the nature and quality of the defendant's contacts with the forum state." **Id**. at 474. Accordingly, in the absence of some "meaningful contacts, ties or relations," the forum state cannot exercise general personal jurisdiction over a foreign defendant. **Id**. The High Court explained,

> By requiring that individuals have 'fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign,' the Due Process Clause gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.

**Id**. at 472-73.

Thus, pursuant to those constitutional principles, a foreign company situated similarly to Appellee cannot be subjected to the personal jurisdiction of a forum state unless it has "fair warning that a particular activity" will expose it to jurisdiction. **Id**. at 473. In my view, the Pennsylvania registration requirement, which we now treat as now synonymous with "consent," fails to provide the requisite warning that our High Court envisioned as satisfying due process in **Burger King**.

I begin with a primer on the relevant statutory framework. Section 411(a) of the Pennsylvania Associations Code ("Associations Code"), 15 Pa.C.S. §§ 101-419, requires a foreign corporation or limited liability company to register with the Pennsylvania Department of State prior to conducting business in the Commonwealth. Section 411 of the Associations Code provides, in pertinent part, as follows:

> **(a) Registration required**.--Except as provided in section 401 (relating to application of chapter) or subsection (g), a foreign filing association or foreign limited liability partnership may not do business in this Commonwealth until it registers with the department under this chapter.
>
> . . . .
>
> **(e) Governing law not affected**.--Section 402 (relating to governing law) applies even if a foreign association fails to register under this chapter.

15 Pa.C.S. § 411(a) and (e).

Notwithstanding the conclusions of our federal courts in **Bors**, and **Bane**, which I examine *infra*, foreign businesses do not expressly consent to personal jurisdiction in Pennsylvania during the registration process. Indeed, as referenced above, the pertinent sections of the Associations Code does not broach the subject of jurisdiction at all. At most, the Associations Code provides that a foreign corporation "shall enjoy the same rights and privileges as a domestic entity and shall be subject to the same liabilities, restrictions, duties and penalties now in force or hereafter imposed on domestic entities,

J-A22039-17

to the same extent as if it had been formed under this title."[3]  15 Pa.C.S. §

402.  Clearly, that is not an expression of consent to the general personal

jurisdiction by the Commonwealth for all cases regardless of the remoteness

of that forum to any aspect of the lawsuit.

While the Associations Code does not impose personal jurisdiction upon

foreign corporations as a consequence of registration, our version of a long-

_____

[3] Section 402(d) of the Associations Code governs the rights and responsibilities of foreign associations.  That proviso states:

> **(d) Equal rights and privileges of registered foreign associations**.--Except as otherwise provided by law, a registered foreign association, so long as its registration to do business is not terminated or canceled, shall enjoy the same rights and privileges as a domestic entity and shall be subject to the same liabilities, restrictions, duties and penalties now in force or hereafter imposed on domestic entities, to the same extent as if it had been formed under this title. A foreign insurance corporation shall be deemed a registered foreign association except as provided in subsection (e).

15 Pa.C.S. § 402(d).

While § 402(d) indicates that foreign corporation will be subject to the same liabilities, restrictions, duties and penalties as domestic corporations, these general references to corporate responsibilities do not spell out the jurisdictional consequences of registration.  To the extent that the reasoning underlying **Bors** and **Bane** would extrapolate notice of consent to jurisdiction from the list of responsibilities enumerated in § 402(d), I highlight that § 402 purports to apply to foreign corporations regardless of actual registration. **See** 15 Pa.C.S. § 411(e).  Thus, notwithstanding the express application of § 402(d) to non-registered foreign corporations, it would be illogical to purport to impute personal jurisdiction over a non-registered foreign corporation with no contacts to the Commonwealth.  In my view, it is equally untenable to implicitly broaden the responsibilities in § 402(d) in relation to a foreign corporation with no contacts simply because it filed the state-mandated paperwork.

- 13 -

arm statute does. The long-arm statute, 42 Pa.C.S. §§ 5321-5329, which authorizes the exercise of personal jurisdiction to the fullest extent permitted under the Due Process Clause, is designed to further the Commonwealth's interest in providing its residents a forum to sue nonresidents for injuries caused by nonresidents. *See* § 5322(b) ("Exercise of full constitutional power over nonresidents"); *Leonardo Da Vinci's Horse, Inc. v. O'Brien*, 761 F.Supp. 1222 (E.D. Pa. 1991). As it relates to the case at bar, § 5301(a)(2)(i) extends the Commonwealth's general personal jurisdiction over, *inter alia*, entities that "[qualify] as a foreign corporation under the laws of this Commonwealth." 42 Pa.C.S. § 5301(a)(2)(i). Specifically, that statute provides,

> **(a) General rule.**--The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person, or his personal representative in the case of an individual, and to enable such tribunals to render personal orders against such person or representative:
>
>     . . . .
>
>   (2) Corporations.—
>
>   (i) *Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth*.
>
>   (ii) Consent, to the extent authorized by the consent.
>
>   (iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth.

42 Pa.C.S. § 5301(a)(2)(i)-(iii) (emphasis added).

- 14 -

The **Webb-Benjamin** Court relied upon the foregoing legislative structure, by way of the federal courts' analysis in **Bors**, to conclude that the foreign defendant consented to the trial court's exercise of personal jurisdiction simply by registering as a foreign business in compliance with § 411(a).[4] The flaw with that rationale is that it is founded on an *ipso facto* formulation that equates mandatory registration with consent. From my perspective, classifying something as consent does not make it so. Indeed, as I previously highlighted, the Association Code does not address jurisdiction or consent at all. Thus, I disagree with my esteemed colleagues on the basic principle that complying with a mandated registration requirement in the Associations Act is tantamount to a statement of consent under an unrelated statute, which the registrant may not be aware exists because it is not referenced in the registration statute explicitly. I believe the High Court's articulation of due process in this context demands more.

_____

[4] Notwithstanding my reasoned objections to the **Webb-Benjamin** Court's indiscriminate endorsement of **Bors**, I agree that we are unquestionably bound by *stare decisis* to follow that precedent when applicable. Nevertheless, as noted in the body of my dissent, consent-by-registration does not apply to this case because the statutory predicate for that construct did not exist in 1969, when Appellee registered as a foreign corporation. I also highlight that the facts underlying **Webb-Benjamin** are distinguishable from the facts of the case at bar insofar as the plaintiff therein, Webb-Benjamin, was a Pennsylvania company who filed suit against a Connecticut company based upon breach of contract. Thus, in contrast to the instant scenario, that case validates the purpose of the long arm statute's extension of personal jurisdiction to a foreign corporation that is alleged to have injured a Pennsylvania company. That key dynamic is missing herein.

Read in *para materia*, the registration requirement in the Associations Code and the extension of personal jurisdiction over foreign registrants in the long-arm statute effectively snare foreign corporations and draw them into the Commonwealth's jurisdiction, presumably for the benefit of its residents. However, in a situation like the current case, where no nexus exists between the lawsuit and Commonwealth or its residents, the reason for extending jurisdiction remains unmet. In fact, rather than benefit a Pennsylvania resident, the present application of the jurisdiction-by-registration paradigm diverts the Commonwealth's resources to non-resident litigants and hinders the resolution of civil actions over which the Commonwealth has a legitimate interest in exercising jurisdiction. This result is indefensible.

Thus, rather than invoke the long-arm statute to subject foreign corporations with no connections with Pennsylvania to general jurisdiction based exclusively upon an administrative action, I would construe a foreign corporation's decision to register pursuant to § 411(a) as its acknowledgment that the Commonwealth may exercise personal jurisdiction over lawsuits that stem from the corporation's suit-related activities within the Commonwealth. Stated another way, the act of registration should be interpreted as conferring specific, as opposed to general, jurisdiction over a corporation in relation to its in-state activities. This narrow view of consent by registration corresponds with the rationale for exercising jurisdiction under the minimum contacts standard the High Court discussed in **Daimler AG v. Bauman**, 134 S.Ct. 746

(2015), and it avoids the due process concerns that I believe proliferate in the federal courts' analyses in **Bane** and **Bors**.

Next, I summarize the development of the salient case law in order to explain my view that the absence of express notice in the Associations Code and the lack of a viable alternative for a foreign business to avoid "consent" undercut the notion that jurisdiction by registration satisfies the "fair warning" standard that our High Court articulated in **Burger King**, **supra** at 472-73 ("Due Process Clause gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit") or the constitutional protections outline in **International Shoe**, **supra** at 319 (protection of liberty interest against being subjected to binding judgments in foreign forum with no meaningful relationship).

In **Bane**, the Third Circuit Court of Appeals confronted an issue similar to the case at bar and reversed the federal district court's order dismissing an age discrimination complaint filed in the Eastern District of Pennsylvania due to the lack of personal jurisdiction over the foreign defendant, Netlink, Inc. In rejecting the district court's analysis, the **Bane** Court held that under § 5301(a)(2)(i), the mere act of registration "carries with it consent to be sued in Pennsylvania courts." **Id**. at 640. The court reasoned that, by registering to do business in Pennsylvania, Netlink "purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the

benefits and protections of its laws." *Id*. (quoting *Burger King Corp.*, *supra* at 475). Significantly, the *Bane* Court neglected to reference the actual registration requirements under the Associations Code—as that statute does **not** inform foreign corporations of the consequences of compliance. Instead, referencing only § 5301(a)(2)(i) of the long-arm statute, it concluded that Pennsylvania had general personal jurisdiction over Netlink. *Id*.

Subsequently, in *Daimler*, the U.S. Supreme Court honed its due process jurisprudence in the determination of whether a state has general personal jurisdiction based upon a non-resident's contact with that forum. As the High Court framed the issue, "the inquiry . . . is not whether a foreign corporation's in-forum contacts can be said to be in some sense continuous and systematic, it is whether that corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State." *Id*. at 139 (quotation marks omitted) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

Thereafter, in *Bors*, a Pennsylvania federal district court invoked the *Bane* Court's rationale in order to conclude that exercising jurisdiction over a registrant pursuant to § 5301(a)(2)(i) was not constitutionally infirm. Again, equating the registration requirement with consent, the *Bors* Court reasoned that, since consent remained a valid basis to invoke personal jurisdiction after *Daimler*, a foreign corporation cedes to jurisdiction "by registering to do

business under a statute which specifically advise the registrant of its consent by registration." *Id*. at 655.

In *Gorton v. Air & Liquid Systems Corp.*, 303 F.Supp.3d 278 (M.D. Pa. 2018), the federal district court drafted a comprehensive, in-depth analysis of the nuanced effect that *Daimler* has upon Pennsylvania jurisprudence. The *Gorton* Court highlighted that the majority of jurisdictions have interpreted the *Daimler* Court's holding as a statement that mere compliance with a registration statute is not a sufficient basis to exercise personal jurisdiction over a foreign corporation. *Id*. at 296-97 (collecting cases). However, the *Gorton* Court acknowledged that, where the registration statute provides express notice of the consequences of registration, a foreign registrant consents to general jurisdiction. *Id*. Thus, imputing knowledge of § 5301 of Pennsylvania's long-arm statute upon a registrant under the Associations Code, the *Gorton* Court concluded that the long-arm statute establishes consent. It stated, "Without the express language of section 5301 the court would not have a sufficient basis to conclude that the defendant knowingly and voluntarily consented to the general jurisdiction of Pennsylvania courts." *Id*.

Most recently, in *Webb-Benjamin*, this Court cited *Bors* and *Gorton* approvingly in a similarly-succinct adoption of the principle first articulated in *Bane*, *i.e.*, that consent by registration is a valid basis to exercise personal jurisdiction. *See Webb-Benjamin*, *supra* at *4,*5. Specifically, the *Webb-*

**Benjamin** Court concluded that the **Daimler** Court's holding did not eviscerate consent as a mechanism to obtain general personal jurisdiction. **Id**. at *5. Fundamentally, that statement is an accurate reiteration of established law. Importantly, however, the issue is not whether **Daimler** precludes jurisdiction by consent; clearly it does not. Rather, the problem posed by the application of § 5301(a)(2)(i) in the case at bar is whether consent that is coerced as a consequence of registration under a separate statute satisfies the due process concerns the United States Supreme Court highlighted in **International Shoe**. In my view, it does not. Stated more eloquently, "[c]oerced consent [is] an oxymoron [that] cannot legitimately form the basis . . . of general jurisdiction over a corporation." Tanya J. Monestier, Registration Statutes, General Jurisdiction, and the Fallacy of Consent, 36 Cardozo L. Rev. 1343, 1348 (2015).

Reduced to its irreducible minimum, jurisdiction-by-registration likens compliance with the § 411(a) registration mandate to an express waiver of due process. The calculus of the analysis is linear: "registration *equals* consent *equals* personal jurisdiction." Monestier, **supra** at 1379. As it is beyond cavil that a person may consent to personal jurisdiction, that side of the equation is unassailable. However, the foundational assumption of the opposing side of formula is that compulsory registration is a valid form of consent. It is not.

The fundamental fallacy with the principle of registration by consent is the idea that consent is traditionally considered volitional and deliberate, *i.e.*, it involves a choice to submit. Pursuant to the majority's view, as supported by our recent holding in **Webb-Benjamin**, the mere act of complying with the mandated registration under § 411(a) of the Associations Code is tantamount to consent. However, as I have repeatedly highlighted, the Associations Code does not inform the registrant of the jurisdictional consequences of registration. Without providing notice of the consequences of completing the government issued form, the "consent" that the Commonwealth purportedly garners under § 411 is utterly devoid of the deliberate volition that is the hallmark of consent. In this scenario, the registrant blindly relinquishes its fundamental due process rights and is mechanically subjected to the general jurisdiction of a forum with which it has no specific relationship.

In my view, to satisfy the rigors of due process, a consent-through-registration scheme must demonstrate that a registrant understands, or at least has notice of, the jurisdictional consequences of registration. As one commenter framed this issue,

> [The] absence of minimum contacts cannot be palliated by employing a consent theory. While the Supreme Court has pronounced that certain legal arrangements may actually constitute a consent to jurisdiction without regard to minimum contacts, the Court has also held that such consent is ineffective in the absence of notice. Thus, even assuming the somewhat doubtful proposition that a state may constitutionally exact consent from a nonresident corporation to suit for any and all

> causes of action as a condition to registering to do business in the state, the nonresident would, at a constitutional minimum, have to be aware that its registration would result in its amenability to the state's plenary authority.

Charles W. Rhodes, The Predictability Principle in Personal Jurisdiction Doctrine: A Case Study on the Effects of a "Generally" Too Broad, But "Specifically" Too Narrow Approach to Minimum Contacts, 57 Baylor L. Rev. 135, 235 (2005) (footnotes omitted). Another author observed, "The idea that a corporation can fill out certain state-mandated forms that a court may deem to constitute consent to all-purpose jurisdiction, without the corporation knowing about that consequence in advance, is repugnant to any basic understanding of consent." Monestier, *supra* at 1388.

I agree that § 5301(a)(2)(i) of Pennsylvania's long-arm-statute states that it extends the Commonwealth's general personal jurisdiction over a registered foreign corporation. However, even presuming a foreign company's awareness of the long-arm statute at the time of registration, I would not manufacture consent from the Commonwealth's unilateral exertion of general personal jurisdiction. Short of the notice and deliberate volition that I discussed above, jurisdiction under § 5301(a)(2)(ii) is founded on no more than the prevailing legal fiction that registration equates to consent. Again, while registration may form the basis of personal jurisdiction in some circumstances where the registrant has a connection to the jurisdiction, a foreign corporation's registration under Pennsylvania's statutory rubric is not

grounded in the traditional idea of consent. Instead, it is founded upon coerced consent insofar as no viable alternative to registration exists.

Even if we interpret the collective legislation as clearly articulating the jurisdictional consequences of complying with the registration requirement, and therefore putting the registrant on notice, the assertion of general personal jurisdiction would still violate due process because it presents a foreign corporation with the Hobson's choice of either (1) submitting to general personal jurisdiction in cases where, as here, neither party nor the cause of action has any relationship with the forum; (2) violating the Association Code's registration requirements and subjecting itself to the sanction outlined in § 411(b); or (3) avoiding the state entirely. However, as Professor Monestier pointed out, even these options are inadequate when one considers that every state can assert the prevailing legal fiction that registration-based consent satisfies the dictates of due process and constitutionally compel a corporation to consent to personal jurisdiction in that forum. *See* Monestier, *supra* at 1390 ("If consent is a legitimate rational for registration-based general jurisdiction, then all fifty states could constitutionally exercise it."). Thus, the only real options are to comply with the registration requirement and be deemed to have consented to general personal jurisdiction or flout the various registration requirements and risk the consequences of disobedience. Stated another way, "a corporation's choices--other than consenting to general jurisdiction--are limited. It can simply not

do business in the United States or it can deliberately break the law." ***Id***. This dilemma begs the question—if the essential component of consent is a genuine choice to withhold it, where a party has no alternative but to acquiesce to a forum's exertion of personal jurisdiction, how can that consent be deemed voluntary? In my view, it cannot. If the foreign corporation wishes to avoid sanctions, it has no choice but to comply with the registration requirement and the concomitant submission to personal jurisdiction in that forum. In this scenario, the "consent" amounts to little more than a coerced waiver of due process.

A sister jurisdiction in Texas reached the same conclusion while addressing the issue of coerced consent:

> The idea that a foreign corporation consents to jurisdiction . . . by completing a state-required form, without having contact with [the forum], is entirely fictional. Due process is central to consent; it is not waived lightly. A waiver through consent must be willful, thoughtful, and fair. "Extorted actual consent" and "equally unwilling implied consent" are not the stuff of due process.

***Leonard v. USA Petroleum Corp.***, 829 F. Supp. 882, 889 (S.D. Tex. 1993). Identical concerns permeate the consent-by-registration construct that this Court validated in ***Webb-Benjamin***.

Finally, as I referenced at the outset of this dissent, Appellants' claim fails under the facts of this case. We cannot impute Appellee's consent to general jurisdiction under the consent-by-registration construct herein because the predicate statute that extends general personal jurisdiction over a registrant, § 5301, did not exist during 1969, when Appellant registered as

a foreign corporation. Under these facts, notice, whether express or implied, is absent.

The ***Gorton*** Court addressed a similar issue and concluded that "[b]ecause the explicit general-jurisdiction language in section 5301 did not exist prior to 1978, a [foreign] defendant qualified to do business in Pennsylvania prior to that time . . . would not be subject to the personal jurisdiction of courts located in Pennsylvania based only upon that defendant's qualification as a foreign corporation in the state." ***Gorton***, ***supra*** at 298. I agree with this legal proposition and would apply it in the present case. In addition, while I observe that the ***Gorton*** Court ultimately concluded that two of the foreign defendants who registered prior to the statute's effective date consented to general personal jurisdiction retroactively because the plaintiff demonstrated that the foreign defendants "continued to make filings in Pennsylvania" after the statute's effective date, that did not occur in this case. ***Id***. at 300, 301-02.

Instantly, Appellee did not consent to general jurisdiction because its registration as a foreign corporation predated the § 5301 consent requirement by nine years. Moreover, unlike the plaintiffs in ***Gorton***, Appellants failed to aver, much less document, that Appellee updated its registration status after

1978, or that it otherwise adopted the consent requirement retroactively.[5] Thus, contrary to the majority's perspective herein, Pennsylvania law did not expressly impose the consent requirement upon foreign registrants when Appellee registered. Hence, there is no basis to conclude that Appellee knowingly and voluntarily consented to the Pennsylvania court's exercise of general personal jurisdiction.

In conclusion, I believe that Appellants' consent-by-registration argument is waived, and the majority improperly reversed the trial court's order dismissing the case based upon an argument that was not leveled below. Moreover, in my view, the mechanical application of consent-by-registration employs an unsound perspective of "consent" that ignores both the lack of notice in the Associations Code and the Supreme Court's due process concern that a foreign defendant has "fair warning" that it is exposed to a forum's jurisdiction. To remedy this situation, I would equate registration under § 411 with the necessary "fair warning" that in-forum activities would subject it to personal jurisdiction. Finally, even though we are bound by our recent holding in **Webb-Benjamin**, Appellants' claim fails because the long-arm statute that forms the foundation for that legal construct postdates Appellee's 1969

---

[5] While the **Gorton** Court seemingly placed the burden on the defendant to disprove its retroactive consent to jurisdiction, it is unquestionably plaintiff's burden to overcome the defendant's initial challenge and establish the Commonwealth's authority to impose personal jurisdiction. **See Sulkava**, **supra** at 889 ("Once the moving party supports its objections to personal jurisdiction, the burden of proving personal jurisdiction is upon the party asserting it.").

registration under the Associations Code and Appellants neglected to demonstrate that Appellees took any action to endorse the 1978 provision after the fact. For of the all of forgoing reasons, I respectfully dissent.